[No. 6236. Decided July 24, 1906.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN H. MESSNER *et al.*, *Defendants*, J. W. PRALL, *Appellant*.[1]

CRIMINAL LAW—CONSPIRACY—DEFINITION. Conspiracy is not a statutory but a common law offense, in this state; and includes either a combination to do an unlawful act or to do a lawful act by unlawful means.

SAME—INFORMATION—SUFFICIENCY. An information charging a conspiracy to cheat and defraud by obtaining a mortgage, under false pretenses, need. not set out the false pretenses or description of the property; since if the object of the conspiracy is the accomplishment of an unlawful act, the means by which such act is accomplished need not be set forth.

SAME—TRIAL—INSTRUCTIONS. In a prosecution against three defendants for a conspiracy, it is error to instruct that the jury must find the defendants guilty, if it appears that they, or any two of them, conspired as alleged in the information; and such an instruction would be specially injurious to one of the defendants who was not connected with all the acts of the other conspirators, and against whom there was no corroboration of the testimony of the prosecuting witness.

SAME—DEFENDANT'S THEORY OF CASE. In a prosecution for a conspiracy to raise money on a mortgage for the purpose, as claimed by the prosecuting witness, of securing bail, bribing officials, and aiding in an escape, it is error for the trial court, after instructing on that theory of the case, to refuse to give instructions requested by the defendant as to his theory of the case, it appearing in the evidence that he was endeavoring to raise money for a cash bail and to pay the fees of the attorneys upon an appeal.

1Reported in 86 Pac. 636.

SAME—EVIDENCE—SUFFICIENCY—CORROBORATION. It would seem that, upon a prosecution for a conspiracy, the testimony of the prosecuting witness, who was one of the conspirators and discredited, must be corroborated as to the unlawfulness of the purpose of the conspiracy.

Appeal from a judgment of the superior court for Spokane county, Carey, J., entered October 28, 1905, upon a trial and conviction of the crime of conspiracy. Reversed.

*M. J. Gordon* and *Sullivan, Nuzum & Nuzum,* for appellant, contended, among other things, that the evidence was insufficient in that it failed to show any intent to defraud. *People v. Cadot,* 138 Cal. 527, 71 Pac. 649; *State v. Palmer,* 50 Kan. 318, 32 Pac. 29; *People v. Wakely,* 62 Mich. 297, 28 N. W. 871; *State v. Mathews,* 44 Kan. 596, 25 Pac. 36, 10 L. R. A. 308; *State v. Clark,* 46 Kan. 65, 26 Pac. 481. It is error to fail or refuse to give an instruction upon the defendant's theory of the case, where there is any evidence to support it. 12 Cyc. 653; 4 Current Law 50; *State v. Tough,* 12 N. D. 425, 96 N. W. 1025; *People v. Keefer,* 65 Cal. 232, 3 Pac. 818; *Casteel v. State,* 73 Ark. 152, 83 S. W. 953; *Williams v. State* (Tex. Cr. App.), 79 S. W. 521; *Mann v. State* (Tex. Cr. App.), 83 S. W. 195; *Gather v. State* (Tex. Cr. App.), 81 S. W. 717; *Otto v. State* (Tex. Cr. App.), 80 S. W. 525.

*R. M. Barnhart, A. J. Laughon, Fred C. Pugh,* and *C. A. Gordon,* for respondent, contended, *inter alia,* that if the object of the conspiracy is to do a thing in itself unlawful, the means by which it is accomplished need not be stated. 8 Cyc. 667, 668, 684, 692, and cases cited; *People v. Butler,* 111 Mich. 483, 69 N. W. 734, and cases cited; *State v. Grant,* 86 Iowa 216, 53 N. W. 120; *State v. Soper,* 118 Iowa 660, 91 N. W. 774; *State v. Young,* 37 N. J. L. 184; *Madden v. State,* 57 N. J. L. 324, 30 Atl. 541; *Rex v. Gill,* 2 Barn. & Ald. 204; *Moore v. People,* 31 Colo. 336, 73 Pac. 30; *Commonwealth v. Meserve,* 154 Mass. 64, 27 N. E. 997; 8 Cyc. 627, 630, 667; 2 Wharton, Criminal Law (9th ed.), § 1348;

2 Bishop, New Criminal Proc., §§ 207, 208, 220, 242. The evidence showed a prima facie case of conspiracy. *State v. McCann,* 16 Wash. 249, 47 Pac. 443, 49 Pac. 216; *State v. Thompson,* 69 Conn. 720, 38 Atl. 868; *Chadwell v. Commonwealth,* 24 Ky. Law 818, 69 S. W. 1082; *People v. Lawrence,* 143 Cal. 148, 76 Pac. 893, 68 L. R. A. 193; *Gambrel v. Commonwealth,* 26 Ky. Law 28, 80 S. W. 808. It is no defense that the pretense was absurd or irrational. *People v. Bird,* 126 Mich. 631, 86 N. W. 127; *People v. Gilman,* 121 Mich. 187, 80 N. W. 4, 80 Am. St. 490, 46 L. R. A. 218; *People v. Summers,* 115 Mich. 537, 73 N. W. 818; *People v. Watson,* 75 Mich. 582, 42 N. W. 1005. It is no defense that the person conspired against was himself engaged in an unlawful business. *People v. Watson, supra.* A conspiracy is complete when the agreement is made although the means to be employed had not been considered by the conspirators. *State v. Soper,* and *State v. Thompson, supra; State v. Stewart,* 32 Wash. 103, 72 Pac. 1026. A withdrawal from carrying out the scheme after entering into the conspiracy is no defense. *Dill v. State,* 35 Tex. Cr. App. 240, 33 S. W. 126. A conspiracy shown by circumstantial evidence is sufficient. *State v. Thompson, supra; State v. Prater,* 52 W. Va. 132, 43 S. E. 230; *Dixon v. State,* 116 Ga. 186, 42 N. E. 357; *People v. Lawrence, supra; People v. Moran,* 144 Cal. 48, 77 Pac. 777. It is not necessary to show that the conspirators came together or were even acquainted with each other. *State v. Lawrence,* and *People v. Moran, supra; State v. Ryan* (Ore.), 82 Pac. 703.

RUDKIN, J.—An information was filed in the superior court of Spokane county, charging John H. Messner, J. W. Prall and Anette Franzen with the crime of conspiracy, committed as follows:

"That the said defendants, John H. Messner, J. W. Prall and Anette Franzen, on the 22nd day of July, A. D. 1905, in the county of Spokane, aforesaid, maliciously and un-

justly devising to cheat and defraud one Mary A. Latham, did then and there wilfully, unlawfully, falsely, feloniously, deceitfully, fraudulently and designedly conspire, combine, confederate and corruptly agree together, to get, acquire and obtain unto themselves (said Messner, Prall and Franzen) of and from said Latham, by divers false and fraudulent pretenses, subtle means, and devices, a mortgage to be signed and executed for and on behalf of said Latham by W. A. Glasson for and in the sum of three thousand six hundred fifty dollars ($3,650.00) and of the value of three thousand six hundred fifty dollars ($3,650.00) covering and upon certain real estate the property of said Latham and without any consideration whatsoever for said mortgage coming or flowing or paid or to be paid to said Latham or to any one on her (said Latham's) behalf, with intent then and there and thereby to cheat and defraud said Latham."

To this information each of the defendants interposed a plea of not guilty. The application of the defendant Franzen for a separate trial was granted, and the remaining defendants were tried together and found guilty as charged. A motion for a new trial was overruled, and from the judgment and sentence of the court the defendant Prall has appealed.

The different assignments of error have been presented and discussed under three general heads, as follows: Objections going to the sufficiency of the information; exceptions to the instructions given, and to the refusal to give instructions requested; and insufficiency of the evidence to sustain the verdict. The appellant contends that the information is insufficient because it does not set forth the false pretenses or contain a description of the land upon which the defendants conspired to obtain the mortgage from the prosecuting witness. Conspiracy is not a statutory offense in this state, and we must therefore look to the common law for a definition of the crime.

"Without attempting to review and reconcile all the cases, we are of opinion that, as a general description, though perhaps not a precise and accurate definition, a conspiracy must

14—43 WASH.

be a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful, by criminal or unlawful means." Per Shaw, C. J., in *Commonwealth v. Hunt*, 4 Met. 111, at p. 123.

See, also, 2 Bishop, New Crim. Law, § 175; 6 Am. & Eng. Ency. Law (2d ed.), 832. The essence of the crime of conspiracy is the unlawful combination, and if the object of the conspiracy is the accomplishment of some unlawful act, the means by which the unlawful act is to be accomplished need not be set forth in the indictment or information. *People v. Butler*, 111 Mich. 483, 69 N. W. 734; *State v. Grant*, 86 Iowa 216, 53 N. W. 120; 8 Cyc. 667, and cases cited. The information was therefore sufficient.

To a proper understanding of the questions arising out of the instructions given and refused, a brief reference to the testimony becomes material. At the time of the commission of the offense charged in the information, the prosecuting witness was under conviction for the crime of arson, and was out on bail in the sum of $2,500 pending further proceedings in the cause in which the conviction was had. She testified, in substance, that a mortgage to secure the sum of $3,650 was to be executed in favor of the appellant Prall by one Glasson, in whose name the title to the property stood, and that this sum was to be disposed of as follows: $1,500 to pay the amount of her reduced bail bond, in order that she might leave the state, $2,000 to bribe various officers of Spokane county to the end that she might not be brought back or interfered with, $100 to the appellant Prall for his trouble, and $50 to assist the witness in making her escape. In order to sustain the charge of conspiracy to obtain the mortgage under false pretenses, the prosecution must take the position that these representations as to the disposition to be made of the proceeds arising from the mortgage were false and untrue. The appellant, on the other hand, testified that the mortgage was to be executed in the sum of $3,500, $2,500 of

which was to be advanced by him and used as cash bail for Mrs. Latham pending her appeal to the supreme court in the arson case, and the remaining $1,000 was to go to Peacock, Wells & Ludden, attorneys retained to prosecute the appeal. In this state of the testimony the court charged the jury as follows:

"And in this connection, I instruct you that, if you find from the evidence beyond a reasonable doubt that the defendants, Messner, Prall and Franzen, or any two of them, entered into a conspiracy as alleged in the information, for the purpose there stated, and in furtherance of such conspiracy induced said Latham to believe that the money or any part thereof to be raised by said mortgage was to be raised to bribe persons in official positions, it will be your duty to find the defendants guilty, even though you further find that said Latham desired that the money to be so raised should be used for such unlawful purpose;"

and refused the following, requested on the part of the appellant:

"If you find from the evidence in this case that $1,000 represented by the mortgage mentioned in the information was to be secured to the firm of Peacock, Wells & Ludden as attorneys' fees for the witness, Mary A. Latham, and $2,500 represented by said mortgage was to be paid by defendant Prall into any bank the said Mary A. Latham or her said attorneys might select for the use and benefit of said Mary A. Latham, the court instructs you that your verdict should be not guilty."

We think the instruction as given was erroneous, as it told the jury in effect that both defendants on trial were guilty even though the conspiracy were confined to the defendants Messner and Franzen; and when we come to a further review of the testimony, it will appear that such instruction may have been highly prejudicial to the appellant Prall. The requested instruction, or one of similar import, should have been given. Every litigant has a right to have his theory of the case presented to the jury, if there is testimony to sustain it, and there was ample testimony to sustain the theory em-

bodied in this request. We think all the authorities are in accord on this question. *People v. Keefer,* 65 Cal. 232, 3 Pac. 818; *State v. Tough,* 12 N. D. 425, 96 N. W. 1025; *Williams v. State* (Tex. Cr. App.), 79 S. W. 521; *Otto v. State* (Tex. Cr. App.), 80 S. W. 525; *Gather v. State* (Tex. Cr. App.), 81 S. W. 717; *Mann v. State* (Tex. Cr. App.), 83 S. W. 195; *Jones v. State,* 33 Tex. Cr. App. 492, 26 S. W. 1082.

In the last case cited the court said:

"Whatever may be the views entertained by a court as to the truth or falsity of the evidence adduced, it is incumbent upon him to charge the jury, under appropriate instructions, the law applicable to every phase of the testimony adduced on the trial. This is expressly commanded by the statute. To hold otherwise would authorize the trial judge to submit the law applicable only to such evidence as he might deem worthy of credit, discarding such as he believed unworthy of credence, and often, doubtless, thus impressing the minds of the jurors with the fact that the testimony was fabricated or false, and in this way it would be used strongly against the accused by the jury. The only safe rule is to follow the statutory law of the state in all criminal trials."

This is a statutory requirement in the state of Texas, but the rule is the same in all jurisdictions whenever a proper request is made.

The respondent does not question the correctness of this rule, but contends that the court, in substance, complied with it. We cannot agree with this contention. While the instructions of the court were clear and explicit, they presented the case entirely from the standpoint of the prosecution. Of course they were accompanied by the injunction that, if the jury did not find the facts as set forth in the charge, they should find the defendants not guilty; but this fell far short of presenting to the jury the appellant's theory of the case.

The last question for consideration is the sufficiency of the evidence to sustain the verdict. The facts disclosed by the testimony are substantially these: The appellant moved from

the state of Oregon to Spokane county in this state, about
the month of May, 1904, accompanied by the defendant
Messner. Soon after their arrival, Messner broke his leg,
and the prosecuting witness treated the fracture. As soon
as Messner was able to be about after the injury, the prose-
cuting witness took him into her drug store at Mead, at the
request of the appellant. Messner remained in and about
the store, looking after the affairs of the prosecuting witness
in a general way, until the destruction of the store building
by fire. The exact relations existing between the parties are
not disclosed by the testimony. The appellant further re-
quested the prosecuting witness to sell Messner an interest in
the store or business, but no sale or transfer was made. This
was about the extent of the dealings between the prosecuting
witness and the appellant Prall until the month of July,
1905.

In the latter part of April, 1905, the appellant returned
to Oregon. On May 7, 1905, after his departure, the store
building above referred to was consumed by fire. A few days
after the fire the prosecuting witness was arrested on the
charge of arson. Soon after her arrest, she communicated
with the appellant in Oregon, and asked him to return and
assist her in her trouble. It does not clearly appear that the
exact nature of her trouble was disclosed by this letter.
There was also a second letter and a communication by tele-
phone from some person in Spokane. During the month of
June, 1905, the prosecuting witness was tried on the arson
charge, and the jury returned a verdict of guilty on the 18th
day of June. Between the 18th day of June and the 13th
day of July, the prosecuting witness held frequent consulta-
tions with the defendants Messner and Franzen. What trans-
spired at these different meetings we only know from the testi-
mony of the prosecuting witness, as the other defendants did
not take the witness stand.

The appellant returned from Oregon on the 12th day of
July, and soon thereafter called upon the prosecuting wit-

ness at the place where she was stopping in the city of Spokane. After consulting with her, he called at the office of Peacock, Wells & Ludden with a view of retaining them to prosecute an appeal to the supreme court on behalf of Mrs. Latham in the arson case. The attorneys refused to take the case or to be mixed up in the matter in any way until their fee of $1,000 was paid or secured. They further informed the appellant that the court would probably exact a new bond from Mrs. Latham in the arson case, as soon as sentence was pronounced, and asked him if she would be able to furnish such a bond. The appellant thought that she would not, and he was then informed that it would be necessary to have the sum of $2,500 at hand to furnish cash bail pending the appeal. It was finally agreed between the appellant and Messrs. Peacock, Wells & Ludden that the appellant would advance the $2,500 to be used as cash bail, and that a mortgage in the sum of $3,500 should be taken from the prosecuting witness or Mr. Glasson in whose name the title to the property stood, to secure the $2,500 advanced by the appellant and the $1,000 attorneys' fee of Peacock, Wells & Ludden.

The appellant then obtained an order from the prosecuting witness on the Holland Bank for the abstract of title to the property, presented the order to the bank, obtained the abstract, and turned it over to the attorneys for examination. The attorneys discovered an existing mortgage on the property in the sum of $2,000. The appellant informed them that he had been told that this mortgage was a mere security for the present bail bond of the prosecuting witness and would be discharged as soon as the bail bond was superseded by another. Mr. Wells consulted the mortgagee and ascertained that the existing mortgage was for a *bona fide* loan, and that only $500 had been paid thereon. Upon this discovery, both the appellant and the attorneys consulted refused to have anything further to do with the mortgage or the case. These negotiations covered several days, during which, on the 20th day of July, the prosecuting witness was

sentenced to imprisonment in the penitentiary for a term of four years.

On the second night after these negotiations fell through, the prosecuting witness left Spokane and went to Mead, and the following night fled to Idaho. She was brought back to Spokane and, upon her return, disclosed to the officers the facts testified to by her as above set forth, and as a result the defendants Messner and Franzen and the appellant Prall were arrested on the charge of conspiracy. As already stated, she testified at the trial that the funds arising from the mortgage were to be used in an entirely different manner from that stated by the appellant, largely for the purpose of bribery. The negotiations between the appellant and Peacock, Wells & Ludden are established facts in the case, and they would seem to be wholly inconsistent with the theory of the prosecution and the testimony of the prosecuting witness. The conduct of the appellant can only be accounted for on the assumption that he was planning a defense to this charge while he was plotting to obtain a mortgage from the prosecuting witness by false pretenses, and, yet, the very defense he planned would prove his undoing in case he succeeded in his efforts to obtain the mortgage by other means. It may be that the defendants Messner and Franzen and the prosecuting witness discussed the plans and propositions testified to by her before the return of the appellant from Oregon, but there is no evidence to connect the appellant with any conspiracy until as late as July 12. These facts disclose the vice in an instruction which would permit the jury to find the appellant guilty on proof of a conspiracy between Messner and Franzen alone, as well as the harm resulting to the appellant from the failure of the court to present his theory of the case to the jury.

This court will not pass finally upon the testimony at this time. The prosecuting attorney declares in his brief that "a pathetic story is revealed by the testimony in the record," and in this connection it becomes a pertinent inquiry whether

sympathy, false or well grounded, for this woman, and passion aroused by the charge of wholesale bribery, did not enter too largely into this verdict. We should not judge the prosecuting witness harshly in her misfortune, but we cannot refrain from reading her history as it is written in the record before us. She is a convicted felon; she has fled from justice; she has disposed of her property to defraud her creditors; she has engaged in a wholesale conspiracy to corrupt and bribe the entire official force of Spokane county, and there is more than a suspicion in the record that her conduct in the practice of her profession is far from what it should be. She has run a drug store and a grocery store; she has practiced medicine for upwards of fifteen years; she is above the average in experience and intelligence and her conduct is not the result of ignorance. Yet she would have us believe that she, without reserve, without reproach, and without suspicion, accepted the statements of these defendants that they could bribe the courts, the prosecuting attorney, and the sheriff of Spokane county for a few paltry dollars, so that they would not recognize her on the streets or call her to the bar of justice to answer for her crimes. When a man's liberty is placed in jeopardy by the uncorroborated testimony of such a witness, he should at least be accorded every safeguard the law affords. The respondent says that she is corroborated. She is in a measure, but not where she needs it most. The confederation or concert of action might be inferred, but proof of the unlawful purpose rests upon her testimony alone. In this she is corroborated by neither fact nor circumstance. Further than this, she denied that she gave the appellant an order on the bank for the abstract, and denied that she remembered to whom a certain letter was written or sent. Yet there is no question that the order was given and that the letter was sent to the appellant. All this tends to show that, along with her other failings, her memory is treacherous or her motives corrupt. If a witness can reach a stage of degredation where a court can declare, as a matter of law,

that her uncorroborated testimony cannot satisfy an unpreju-
diced mind beyond a reasonable doubt, this witness has almost
reached that stage.

However, the printed page may deceive. Trial judges and
jurors have opportunities that we do not enjoy, and if another
jury should return a similar verdict on a proper submission
of the case, and the trial judge should permit that verdict to
stand, all further inquiry might be foreclosed. For the error
in the giving and refusing of instructions, the judgment is
reversed, and a new trial ordered.

MOUNT, C. J., FULLERTON, HADLEY, ROOT, DUNBAR, and
CROW, JJ., concur.