[No. 7845.  Department Two.  August 25, 1909.]

THE STATE OF WASHINGTON, *Respondent*, v. A. Z. ERICKSON,
*Appellant*.[1]

CONSPIRACY—MONOPOLIES—SALE OF MILK—INFORMATION—SUFFIC-
IENCY.  An information sufficiently charges a conspiracy at common
law, to control the price of milk in the city of S. when it alleges
that the defendants unlawfully designing to prevent open competi-
tion, unlawfully agreed not to sell milk lower than certain fixed
prices and not to sell to each other's customers, and agreed to and
did raise prices with intent to control the price of milk generally
in said city; and it is immaterial that only part of the milk dealers
of the city entered into the same, since the purpose of their agree-
ment was to create a monopoly.

SAME—EVIDENCE—ADMISSIBILITY—LETTERS OF CO-CONSPIRATOR.  In
a prosecution for conspiracy to create a monopoly in the sale of
milk, letters written by one of the parties to the agreement a few
days thereafter, showing on their face that they were written in
furtherance of the conspiracy, are admissible against a defendant
who was absent when they were written.

SAME—EVIDENCE—ADMISSIBILITY.  In a prosecution for a con-
spiracy to create a monopoly to control the price of milk in a city,
evidence on the part of the defendant that there were a number of
other milk dealers in the city who had not entered into the agree-
ment is immaterial.

CRIMINAL LAW—LIMITATIONS.  A prosecution for conspiracy to
create a monopoly in the sale of milk is not barred by the lapse of
more than two years since such a conspiracy was first attempted,
where there was a renewed attempt within one year, and the prose-
cution was for the latter offense.

TRIAL—INSTRUCTIONS IN WRITING.  Where it does not appear that
a stenographic report of instructions to the jury was made under a
private contract with a party, it will be assumed, in the absence
of anything in the record to the contrary, that the stenographer was
under the direction and control of the court, thereby constituting
the instructions a charge in writing, within the meaning of Laws
1903, p. 119, § 1.

Appeal from a judgment of the superior court for King
county, Frater, J., entered October 26, 1908, upon a trial
and conviction of the crime of conspiracy.  Affirmed.

[1]Reported in 103 Pac. 796.

*John E. Humphries* and *Geo. B. Cole*, for appellant.

*George F. Vanderveer*, for respondent.

Mount, J.—The appellant and others were charged with entering into a conspiracy to control the price of milk in the city of Seattle. The appellant was found guilty and was sentenced to pay a fine of $500, and to imprisonment in the county jail for ten days. He appeals from that judgment.

Several errors are assigned upon instructions, some of which the court gave to the jury and others the court refused to give. The correctness of these instructions depends upon the sufficiency of the information, which was challenged both before and during the trial. The charging part of the information is as follows:

"Said A. Z. Erickson, F. W. Anderson, S. Stray, J. C. Burnam, Alex. Murray, F. O. Kalberg, A. W. Lundberg, and C. Johnson, and each of them, in the county of King, state of Washington, on the 15th day of September, 1907, and on divers dates and days from thence continuously to and including the 31st day of October, 1907, being then and there severally and separately engaged in the business of selling milk in the city of Seattle, said county and state, and then and there unlawfully and injuriously designing and intending to prevent free and open competition in the sale of milk in the said city of Seattle and unlawfully and injuriously devising, designing, and intending to fix and control the price of milk in said city, did then and there continuously, unlawfully, wilfully, and fraudulently combine, conspire, and agree together with each other and with divers and sundry other persons organized and associated with them under the name Seattle Milk Exchange, that the said A. Z. Erickson, F. W. Anderson, S. Stray, J. C. Burnam, Alex. Murray, F. O. Kalberg, A. W. Lundberg, and C. Johnson, would not sell milk in said city of Seattle, on and after the 1st day of October, 1907, at prices lower than following, to wit: Bottled milk, 10 cents per quart; bulk milk, 10 cents per quart; pints, 6 cents; boarding houses, milk 30 cents per gallon, 75 cents per can; grocery stores, bottled milk 30 cents per gallon, bulk 25 cents per gallon. And that during the month of October, the said A. Z. Erickson, F. W. Anderson, S. Stray,

J. C. Burnam, Alex. Murray, F. O. Kalberg, A. W. Lundberg, and C. Johnson, would not sell or deliver milk to each other's customers or patrons or the customers or patrons of other dealers associated in said Seattle Milk Exchange, and in pursuance and furtherance of said unlawful conspiracy and confederation, did on or about the 20th day of September, 1907, circulate and distribute and cause to be circulated and distributed among themselves and other dealers in milk in said city of Seattle and among divers and sundry of their patrons and customers in said city of Seattle, cards and announcements announcing the prices of milk theretofore unlawfully agreed upon among themselves as hereinbefore alleged, and did raise the prices at which their milk was sold in said city of Seattle in conformity with said unlawful agreement, conspiracy and confederation, and during the month of October, 1907, did refrain and did cause and encourage each other, and all their employees, servants and agents to refrain from selling and delivering milk to each other's customers or patrons, or the customers or patrons of other dealers associated in said Seattle Milk Exchange."

It is contended by the appellant that this information charges only that the defendants named agreed that *they would not sell their milk* for prices less than stated, and that they would not sell or deliver milk to each other's customers; and it is argued that the persons accused had a lawful right to agree among themselves to sell their own milk at any reasonable price, and to such patrons, or to such persons, as they desired, and that such agreement was neither a combination to do an unlawful act or the doing of an unlawful act by unlawful means; and therefore the acts charged in the information do not constitute conspiracy at common law. We might readily agree to all this if the information charged no more than the appellant contends. But the information goes further than that. It plainly and directly charges that the defendants "unlawfully . . . designing and intending to prevent . . . open competition in the sale of milk in said city of Seattle . . . and intending to fix and control the price of milk in said city," unlawfully agreed that they would not sell milk lower than fixed

prices, and would not sell or deliver milk to each other's. customers, and in pursuance of this design circulated cards among dealers and customers announcing prices agreed upon, and raised the price at which *their* milk was sold. This clearly charges that the defendants entered into the agreement for the purpose of raising and controlling the price of milk generally within the city. In other words, the information charges a concerted action to accomplish an unlawful purpose, viz., to raise the price of milk generally. This constitutes the crime of conspiracy according to the rules stated in *State v. Messner*, 43 Wash. 206, 86 Pac. 636; *Ford v. Chicago Milk Shippers' Ass'n.*, 155 Ill. 166, 39 N. E. 651, 27 L. R. A. 298; *Chicago W. & V. Coal Co. v. People*, 214 Ill. 421, 73 N. E. 770. In the last case cited, the court say, at page 775:

"The first point made against the indictment is that the second and fourth counts do not charge a conspiracy at common law, in this: that the acts charged are not criminal or unlawful. Those counts charge that the object of the conspiracy was unlawful, and not that its object was lawful and the means for its accomplishment unlawful. It was therefore unnecessary to set out the means whereby the conspiracy was to be accomplished. *Thomas v. People*, 113 Ill. 531. Neither was it necessary that the object of the conspiracy constitute an offense against the criminal law for which an individual might be indicted and convicted, . . . but, if the object thereof was unlawful, said counts sufficiently charge a conspiracy at common law."

The fact that only a part and not all of the milk dealers were engaged in the conspiracy is entirely immaterial, for the defendants were charged with a conspiracy for an unlawful object. Whether they had the power to carry out that purpose might depend to some extent upon the number of dealers engaged, but the fact that some were not included, and for that reason the purpose to be accomplished might become more difficult, does not alter the case. It is possibly true, as argued by the appellant, that a person may lawfully fix his own price upon his own property, and what one

may lawfully do any number may associate together and likewise lawfully do. But this is not such a case. Here the purpose of the agreement was to control the price of milk generally, within the city of Seattle—milk belonging to others as well as that belonging to themselves. The purpose was not to fix a price for their own milk merely. The fixing of the price of their own milk was incidental to the purpose of fixing and controlling the price of other milk. Such purpose, if accomplished, necessarily tends to prejudice the consuming public and to create a monopoly, and is therefore unlawful. The cases of *Herriman v. Menzies*, 115 Cal. 16, 44 Pac. 660, 46 Pac. 730, 56 Am. St. 82, 35 L. R. A. 318; and *State v. Eastern Coal Co.* (R. I.), 70 Atl. 1, relied upon by the appellant, are not opposed to these principles, and do not control this case for reversal. We are satisfied that the information is sufficient. In view of what we have said above, it is not necessary to consider the assignments based upon the instructions, further than to say that the instructions given by the court covered the law of the case as we have concluded above.

Appellant argues that the court erred in admitting in evidence certain letters written by Mr. Stray, one of the defendants. It is claimed that these letters were declarations of Mr. Stray, made in the absence of appellant, and therefore not binding upon him. But it clearly appears from the evidence that Mr. Stray was a party to the agreement or conspiracy, and that these letters were written within a few days thereafter, and they show upon their face that they were written in furtherance of the conspiracy, and while the conspiracy was being carried on. They were therefore clearly admissible in evidence.

Appellant also argues that the court erred in excluding evidence to the effect that there were a number of other persons engaged in selling milk in Seattle besides the defendants; that these other persons were not parties to the agreement. The fact that the agreement or conspiracy did

not comprise all the milk dealers in the city is entirely immaterial. The agreement or conspiracy being unlawful, those who entered into it were guilty whether the monopoly was complete or not. The evidence, however, shows very conclusively that the agreement was effective even though all the dealers were not parties to it.

It is also claimed that the court erred in not discharging the appellant upon motion, because it appeared that the conspiracy had ended and had been dissolved more than two years prior to the time the information was filed. It is true that a prior and unsuccessful attempt had been made, but the evidence very clearly shows that there was a renewed agreement and organization which was made within a year prior to the filing of the information. This was the one upon which the present charge was based. The information was therefore filed within time.

Appellant insists that a new trial must be granted for the reason that a request was made by the appellant for the court to instruct the jury in writing, and that the court failed to comply with this request because certain formal instructions were given orally. It appears, however, from the record that a stenographic report of the evidence and the instructions was taken by a stenographer at the trial. It does not appear that this stenographic report was a private one, as in *State v. Mayo*, 42 Wash. 540, 85 Pac. 251, nor does it appear that this stenographic report was not under the direction and control of the court. We must, therefore, assume that the stenographer was under the direction of the court. It follows, from the rule in *Sturgeon v. Tacoma Eastern R. Co.*, 51 Wash. 124, 98 Pac. 87, and cases there cited, that the statute was complied with, even though the court did not read from manuscript all his instructions to the jury.

We find no error in the record. The judgment must therefore be affirmed.

RUDKIN, C. J., PARKER, CROW, and DUNBAR, JJ., concur.