[No. 17752. , Department Two.   September 10, 1923.]

THE STATE OF WASHINGTON, *Appellant*, v. C. B. SCOLLARD *et al., Respondents.*[1]

CONSPIRACY (3)—INDICTMENT AND INFORMATION (50)—REQUISITES —NECESSITY OF SETTING FORTH MEANS. An information for conspiracy, as defined in general terms by Rem. Comp. Stat., § 2382, must charge the specific acts done and means employed; and a charge that defendants, as milk dealers, conspired to prevent free and open competition in the sale of milk and to fix and control the price, does not sufficiently allege the means employed, where it merely alleges that they combined to force all grocery stores supplied by their distributors to sell milk at not less than certain prices, and threatened to cut off the supply of distributors to dealers who sold at a less sum.

Appeal from a judgment of the superior court for King county, Hall, J., entered September 20, 1922, dismissing a prosecution for conspiracy, upon sustaining a demurrer to the information. Affirmed.

*Malcolm Douglas, Ewing D. Colvin,* and *Ralph Hammer,* for appellant.

*Howe, Farrell & Meier,* for respondents.

[1]Reported in 218 Pac. 224.

FULLERTON, J.—The prosecuting attorney of the county of King filed an information against the defendants (respondents here), the charging part of which reads as follows:

"They, said C. B. Scollard, C. E. Fisher, J. M. Albert, Sumner Osborne, W. Makiyama, Thomas Owens and K. Tsukamaki, and each of them, in the county of King, state of Washington, on or about the 1st day of January A. D. 1922, and on divers days and dates thence continuously to and including the 1st day of April A. D. 1922, being then and there engaged in selling milk in the city of Seattle, said county and state; and then and there unlawfully and injuriously designing and intending to prevent free and open competition in the sale of milk in the said city of Seattle, and unlawfully and injuriously devising, designing and intending to fix and control the price of milk in said city, then and there continuously, wilfully, unlawfully, and fraudulently did combine, conspire and agree together and with each other and with divers and sundry other persons organized and associated with them under the name of Seattle Milk Shippers' Association that they, the said C. B. Scollard, C. E. Fisher, J. M. Albert, Sumner Osborne, W. Makiyama, Thomas Owens and K. Tsukamaki, and each of them, would cause, force and compel all grocery stores supplied by their distributors to sell milk in said city of Seattle at a price of not less than eleven cents per quart retail, and on or about the 1st day of January A. D. 1922, they, the said C. B. Scollard, C. E. Fisher, J. M. Albert, Sumner Osborne, W. Makiyama, Thomas Owens and K. Tsukamaki, and each of them, did threaten divers and sundry of their distributors in said city of Seattle that the milk supply of said distributors would be cut off if said distributors continued to supply milk to dealers who sold such milk for less than eleven cents per quart retail; and during the months of January, February and March A. D. 1922, said C. B. Scollard, C. E. Fisher, J. M. Albert, Sumner Osborne, W. Makiyama, Thomas Owens and K. Tsukamaki, and each of them, did cause and encourage all

their employees, servants and agents to compel the customers of their distributors to sell milk at not less than eleven cents per quart retail.''

After arraignment on the charge, the defendants demurred to the information on the general ground that the facts recited do not constitute a crime. This demurrer the trial court sustained, and, on the election of the state not to amend the information or file another, entered a judgment discharging the accused. The state appeals.

The statute on which the information is founded is § 2382, Rem. Comp. Stat. [P. C. § 8783], and reads as follows:

"Whenever two or more persons shall conspire—

"(1)    To commit a crime; or

"(2)    Falsely and maliciously to procure another to be arrested or proceeded against for a crime; or

"(3)    Falsely to institute or maintain any action or proceeding; or

"(4)    To cheat or defraud another out of any property by unlawful or fraudulent means; or

"(5)    To prevent another from exercising any lawful trade or calling, or from doing any other lawful act, by force, threats or intimidation, or by interfering or threatening to interfere with any tools, implements or property belonging to or used by another, or with the use or employment thereof; or

"(6)    To commit any act injurious to the public health, public morals, trade or commerce, or for the perversion or corruption of public justice or the due administration of the law; or

"(7)    To accomplish any criminal or unlawful purpose, or to accomplish a purpose, not in itself criminal or unlawful, by criminal or unlawful means;

"Every such person shall be guilty of a gross misdemeanor.''

Comparing the charges made in the information with the acts denounced by the statute, it is at once

obvious that, if the information states an offense at all, it states an offense within the provisions of subds. 5, 6 or 7 thereof. It is obvious, also that there are only certain provisions of these subdivisions that the acts charged can be said to fall within. If within subd. 5, the applicable provisions are a conspiracy to prevent another from exercising a lawful trade or calling, or prevent another from doing a lawful act by force, threats or intimidation. If within subd. 6, the applicable provision is a conspiracy to commit an act injurious to public trade or commerce. If within subd. 7, it is a conspiracy to accomplish an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means.

It will be noticed, therefore, that the prohibitions of the statute are general. Under such circumstances, there must be in the information such a statement of the facts and circumstances of the offense as will inform the accused of the specific acts with which they are charged before they can be called upon to answer. It is only where the statute itself sets out fully and with certainty the offense intended to be punished that it is sufficient to charge the offense in the language of the statute, or in language of equivalent meaning. In other words, it is necessary, where the words of the statute are general, that the pleader state not only the object of the conspiracy but the intended manner of its accomplishment.

The pleader in this instance evidently appreciated such necessity. He concluded, and concluded rightly, that it was not enough to charge without more that the defendants, as milk dealers, conspired to prevent free and open competition in the sale of milk in the city of Seattle, and to fix and control the price of milk in that city, but that it was necessary to set forth the means by which they sought to accomplish that purpose.

In this latter part of the charge, we think the pleader failed. Narrowed down to its essentials, the charge is that they combined, conspired and agreed to cause, force. and compel all grocery stores supplied by their distributors to sell milk in the city of Seattle at a price of not less than eleven cents per quart at retail, and threatened divers and sundry of their distributors to cut off the supply of such distributors if they continued to supply milk to dealers who sold such milk for a less price than eleven cents per quart retail, and that they and each of them did cause and encourage all of their employees, servants and agents to compel the customers of their distributors to sell milk at not less than eleven cents per quart retail. Manifestly, it seems to us, these are not acts which, if accomplished, would control the price of milk in the city of Seattle or prevent the free and open competition in the sale of milk in such a manner as to fall within any prohibition of the statute.

There is no allegation that the persons joining in the combination controlled the milk supply, or any considerable part of the milk supply of that city; nor is there any allegation that those in the combination sought to force or compel other milk dealers not in the combination to also sell milk at not less than the minimum price fixed. The charges amount to nothing more than a charge that the defendants agreed together that they would not, through their own distributors, supply milk to retail dealers unless such dealers would consent to sell it at a price of not less than eleven cents per quart retail. But it is not and has never been the law, in the absence of a statute expressly making it so, for a dealer to refuse to sell his commodity to a retailer who will not retail the commodity at prices fixed by the dealer. And the act being lawful for one person,

it does not become unlawful because others may engage with him in doing it.

"What one man may lawfully do singly, two or more may lawfully agree to do jointly. The number who unite to do the act cannot change its character from lawful to unlawful." *Bohn Manufacturing Co. v. Hollis,* 54 Minn. 223, 55 N. W. 1119, 40 Am. St. 319, 21 L. R. A. 337.

"Whatever one man may do alone, he may do in combination with others, provided they have no unlawful object in view. Mere numbers do not ordinarily affect the quality of an act." *National Protective Association of Steam Fitters & Helpers v. Cumming,* 170 N. Y. 315, 63 N. E. 369, 88 Am. St. 648, 58 L. R. A. 135.

See, also, *Jensen v. Cooks' & Waiters' Union,* 39 Wash. 531, 81 Pac. 1069, 4 L. R. A. (N. S.) 302; *State v. Eastern Coal Co.,* 29 R. I. 254, 70 Atl. 1, 132 Am. St. 817.

Had it been alleged in the information that the combination or conspiracy was to control the price of milk generally in the city of Seattle, or had facts been alleged which would show that the combination had that effect, a different question would have been presented. But, as we have shown, the information is free from any allegation of this sort, and it can be said of it, as was said of the indictments in *State v. Eastern Coal Co., supra*:

"A charge of conspiracy that the defendants combined to exercise a certain power must proceed upon the assumption that they have or will have the power to be exercised. Therefore, a charge of conspiracy to exercise a certain power presupposes the acquisition of the power. The gravamen of the offense, however, consists in combining to acquire the power, whether it shall be exercised or not depends entirely upon the will of those who control it. The danger to be guarded against is possession of the power, and efforts to obtain it should be prevented. 'Prosecutions for con-

spiracy are preventive rather than curative.' *State v. Bacon*, 27 R. I. 252, 61 Atl. 653. Conspiracies to exercise power without possessing it must be futile, as if the courtiers of King Canute had conspired to regulate the ocean tide.

"The charge in each indictment is not that the defendants conspired to create a monopoly in order to regulate and fix the price of coal. The charge is that the defendants combined to do something that can only be done through a monopoly. The act of fixing the price is only an attribute of a monopoly, an indicium by which it may be classified. It is a symptom, but it is not the disease itself. It may be argued that because the defendants are charged with conspiring to do that which only monopolists can do, that therefore they are charged with conspiracy to create a monopoly itself. The very fact that it requires argument to complete the pleading shows wherein it is defective. Criminal pleading must be clear and definite."

The case of *State v. Erickson*, 54 Wash. 472, 103 Pac. 796, cited and relied upon by the state, does not support the present information. This will appear from the following quotation from the opinion:

"It is contended by the appellant that this information charges only that the defendants named agreed that *they would not sell their milk* for prices less than stated, and that they would not sell or deliver milk to each other's customers; and it is argued that the persons accused had a lawful right to agree among themselves to sell their own milk at any reasonable price, and to such patrons, or to such persons, as they desired, and that such agreement was neither a combination to do an unlawful act or the doing of an unlawful act by unlawful means; and therefore the acts charged in the information do not constitute conspiracy at common law. We might readily agree to all this if the information charged no more than the appellant contends. But the information goes further than that. This clearly charges that the defendants entered into the agreement for the purpose of raising and control-

ling the price of milk generally within the city.    In other words, the information charges a concerted action to accomplish an unlawful purpose, viz., to raise the price of milk generally."

It is our conclusion that the information fails to state facts sufficient to constitute a crime.   The judgment appealed from will therefore stand affirmed.

MAIN, C. J., PARKER, and TOLMAN, JJ., concur.

PEMBERTON, J. (concurring)—It is admitted that the association of the defendants is organized under the co-operative marketing act for agricultural products, Session Laws of 1920-21, p. 357 (Rem. Comp. Stat., § 2878).   This law was made in the interest of the producer as well as the consumer, and to enable those engaged in agricultural pursuits to secure a reasonable price for their produce.   The information failing to allege that the defendants are receiving a greater price for their milk than the reasonable cost of production, including interest on the investment, there is no crime charged.   It is not a crime to do that which the law expressly authorizes to be done.

I concur in the conclusions reached by Judge Fullerton that the information fails to state facts sufficient to constitute a crime, and that the judgment of the trial court dismissing the action should be affirmed.