[No. 9675–3–I.   Division One.   March 8, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. DONALD
G. ADAMS, JR., *Appellant.*

*Tom Conom,* for appellant (appointed counsel for appeal).

*Russ Juckett, Prosecuting Attorney,* and *Russell Jones, Deputy,* for respondent.

SWANSON, J.—Donald Adams appeals from a conviction of second degree manslaughter with a special verdict of being armed with a deadly weapon. Appellant Adams claims the trial court erred when it denied his request for a self–defense instruction. We agree and accordingly reverse

the trial court and remand this case for a new trial.

Donald Adams lived in a trailer adjoining Doyel Goard's trailer. The two trailers were situated on 5 wooded acres. Neither trailer had a telephone. Adams testified that his "job up there was to protect the area and its belongings."

Approximately May 19, 1980, Glenn Chard, Lance Cox, and a third individual stole some property from the Goard residence. During the crime, Goard recognized Chard's car and he fired a gunshot. Adams was present when the shot was fired, and he and Goard discussed the incident. To defend himself from attack, Goard stockpiled weapons in the trailers, including a shotgun Adams knew was loaded.

On the evening of May 26, 1980, Goard departed his trailer leaving Adams inside. Goard drove past Chard and Cox who were on the way to burglarize Goard's residence. Adams testified that at about 8 p.m. he saw Cox and Chard drive up to, then jog toward, the trailers. Adams testified that he "thought they were coming to do me harm." When he saw them, he took a rifle from the shelf where the weapons were kept, secured the front door of the trailer, went out the back door, and hid behind the outhouse.

Adams heard Cox and Chard forcibly enter Goard's trailer. Adams observed the burglars make two trips transporting property from Goard's trailer to their car. When the burglars returned to the trailer the final time, Adams moved to a position behind a fence in order that he might apprehend them and better protect the area and its belongings. Adams observed Cox leaving the trailer with a loaded shotgun in his hands, but Adams did not know where Chard was. Adams described the position of the shotgun possessed by Cox as "port arms." When Adams observed Cox with the shotgun, Adams testified that he was "very scared . . . in fear of my life." Adams unintentionally fired one shot at Cox, who died instantly from the gunshot wound.

Chard was charged with first degree burglary but, as a result of a plea arrangement with the prosecutor's office, the charge was reduced to possession of stolen property

second degree with a recommendation for no jail time if he testified in this case.

During the trial, the defendant presented evidence on two theories; first, that the killing was excusable and second, that the killing was justifiable as committed in self-defense. The trial court instructed the jury in accordance with the excusable homicide theory but refused to instruct the jury on the self-defense theory. The trial judge reasoned:

> The only evidence the Court can find in the record that would justify a self-defense instruction is the mere statement in answer to a leading question by Mr. Adams that he feared for his life. There is no evidence whatever of any assault or intended assault or attempted assault on his person.

Defense counsel excepted to the trial court's refusal to instruct on self-defense.

In order to properly raise the issue of self-defense, the defendant need only produce "any evidence" tending to prove that the homicide was done in self-defense. The Washington Supreme Court stated in *Owens v. Seattle,* 49 Wn.2d 187, 193, 299 P.2d 560, 61 A.L.R.2d 417 (1956), quoting *Lunz v. Neuman,* 48 Wn.2d 26, 30, 290 P.2d 697 (1955):

> Each party is entitled to have his theory of the case presented to the jury by proper instructions, if there is *any evidence* to support the theory.

(Italics ours.) *Accord, Hansen v. Sandvik,* 128 Wash. 60, 66, 222 P. 205 (1924). *See Sonnenberg v. Remsing,* 65 Wn.2d 553, 557–59, 398 P.2d 728 (1965); *Braden v. Rees,* 5 Wn. App. 106, 111, 485 P.2d 995 (1971). Although defendant needs to produce some evidence so as to raise the self-defense issue, he need not produce the amount necessary to create a reasonable doubt in the jurors' minds as to the existence of self-defense. *See generally State v. Roberts,* 88 Wn.2d 337, 345–46, 562 P.2d 1259 (1977); *State v. Kroll,* 87 Wn.2d 829, 558 P.2d 173 (1976); *see also Mullaney v. Wilbur,* 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975).

Stated conversely, only where no plausible evidence appears in the record upon which a claim of self–defense might be based is an instruction on the issue not necessary. *See generally State v. Roberts, supra.* A defendant's testimony alone is sufficient to raise the issue of self–defense. *See State v. Bius,* 23 Wn. App. 807, 808, 599 P.2d 16 (1979); *State v. Savage,* 22 Wn. App. 659, 660, 591 P.2d 851 (1979).

In determining whether any evidence was produced, the trial court must apply a subjective standard, that is, the court must consider the evidence from the point of view of the defendant as conditions appeared to him at the time of the act, with his background and knowledge, and "not by the condition as it might appear to the jury in the light of testimony before it." *State v. Tyree,* 143 Wash. 313, 317, 255 P. 382 (1927), quoting *State v. Miller,* 141 Wash. 104, 105, 250 P. 645 (1926). *See State v. Tyree,* 143 Wash. at 317. As the Supreme Court has stated:

> The appellants need not have been in actual danger of great bodily harm, but *they were entitled to act on appearances*; and if they believed in good faith and on reasonable grounds that they were in actual danger of great bodily harm, although it afterwards might develop that they were mistaken as to the extent of the danger, if they acted as reasonably and ordinarily cautious and prudent men would have done under the circumstances as they appeared to them, they were justified in defending themselves.

(Italics ours.) *Id. See State v. Wanrow,* 88 Wn.2d 221, 241, 559 P.2d 548 (1977). The court also stated in *Tyree* that

> the amount of force which [appellant] had a right to use in resisting an attack upon him was not the amount of force which the jury might say was reasonably necessary, but what under the circumstances appeared reasonably necessary *to the appellant.*

(Italics ours.) *Id.* at 316. Once any self–defense evidence is produced, the defendant has a due process right to have his theory of the case presented under proper instructions even if

the judge might deem the evidence inadequate to support such a view of the case were he the trier of the facts [and even if] the law is, in a general way, covered by the instructions given.

*Allen v. Hart,* 32 Wn.2d 173, 176, 201 P.2d 145 (1948), quoting 2 *Code Practice and Remedies* § 1497, at 1969 (Bancroft–Whitney ed. 1927); *see State v. Messner,* 43 Wash. 206, 212, 86 P. 636 (1906), quoting *Jones v. State,* 33 Tex. Crim. 492, 26 S.W. 1082 (1894).

In the case at bar, Adams testified that when he saw Chard and Cox jog toward the house, he thought they had come to injure him. Adams recognized Chard, who had burglarized the premises a week earlier and who had been shot at by Goard during the crime. Adams stated that he expected a confrontation with Chard and Cox, so to protect himself, he fled the trailer, taking a rifle with him for his own safety. After Adams had seen Chard and Cox make a forcible entry of Goard's trailer and remove property therefrom, Adams moved his position to obtain a better idea of what was transpiring. Adams observed Cox running while holding port arms a shotgun which Adams knew was loaded. Adams testified that he was "very scared . . . in fear of my life." Adams knew there were other guns in the trailer. He didn't know where Chard was at that time. Cox was about 70 feet away. Adams felt a sense of duty to protect the property and to apprehend Cox, but stated that he didn't intend to shoot Cox. While in this emotional state of fear, Adams fired a shot which struck Cox in the back and caused Cox's death.

Considering these circumstances and Adams' testimony—he thought Chard and Cox had come to do him harm because Goard fired a shot at Chard a week earlier; he was very scared and in fear of his life; he knew he was in a remote area after 8 p.m. with no nearby telephone; and he did not know whether he had been discovered by either burglar, nor where Chard was, nor whether Chard also had a loaded gun—a jury could have found Adams reasonably believed himself to be in imminent danger. Since the evi-

dence could have led a reasonable jury to find self–defense, a fortiori, Adams met the lesser burden of producing "any evidence." Accordingly, the trial judge should have given a self–defense jury instruction.

Adams is awarded a new trial.

DURHAM, A.C.J., and CORBETT, J., concur.

Reconsideration denied June 22, 1982.