
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON , | ) | No. 68605-4-I |
| Respondent, | ) ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| MICHAEL J. KELLY, | ) ) | |
| Appellant. | ) ) | FILED: November 18, 2013 |
| | ) | |

APPELWICK, J. — Kelly appeals his conviction for second degree assault. He first argues that the trial court violated his Fourteenth Amendment right to due process by relieving the State of its burden to disprove self-defense. He also argues that allowing police officers to testify that they received no response when they knocked on Kelly's door without a warrant violated ER 402, ER 403, and the Fourth Amendment. We affirm.

## FACTS

On the night of April 12, 2008 Michael J. Kelly went to the home of his estranged girlfriend, Sheryl Hinds. Kelly discovered Hinds asleep in bed with Randy Becktell, whom she was dating at the time. There is dispute over what happened next.

Kelly recalls Becktell saying, "[Y]ou're dead," as he reached for what Kelly thought was a weapon. Kelly testified that he slapped at Becktell's arms to stop him, and then left the room. According to Becktell, however, he woke up to Kelly standing

over him and extreme pain in his face. Becktell further testified that before he could do anything, he saw Kelly swinging to punch him again, and then he lost consciousness for 15 to 20 minutes.

By the time Becktell regained consciousness and called the police, Kelly had left. Officers went to Kelly's house and knocked on the door, but no one answered. Officer Adam Vermeulen went back to take statements from Becktell and Hinds, while Officer James Wellington went to get a search warrant. He returned with the warrant around 3:30 a.m., and the officers again knocked on the door. Again receiving no answer, they entered a sun room off of Kelly's kitchen.

Kelly testified that after he left Hinds's house, he went for a walk before returning home. He had been home from his walk for about 10 minutes when he noticed movement outside the sun room. He stepped out into the sun room where he met the officers. The officers then placed Kelly under arrest. Officer Wellington testified that Kelly was polite and cooperative. Kelly was charged with second degree assault.

Kelly moved in limine to suppress testimony about his failure to answer the door and any testimony characterizing Kelly's actions as fleeing the scene. The prosecutor objected, arguing that Kelly's failure to answer the door was evidence of flight suggesting consciousness of guilt.

The court ultimately allowed testimony about the officers' investigation, including the initial door knock, for "completion of the story and for res gestae," but not for consciousness of guilt. At trial, Officers Vermeulen and Wellington both testified that when they knocked on Kelly's door, they received no response. The prosecutor referred to this during closing as well, noting the two hours the officers spent in the

neighborhood and knocking on Kelly's door. Kelly was convicted as charged. He appeals.

## DISCUSSION

### I. Self-Defense Instruction

Kelly argues that the trial court violated his right to due process by failing to instruct the jury that the State bore the burden of disproving self-defense. Kelly did not request a self-defense instruction at trial.

We may refuse to hear any claim of error that was not raised at trial. RAP 2.5(a). Kelly thus waived the issue absent manifest constitutional error. See RAP 2.5(a)(3). Under this standard, the defendant must show that the alleged error is truly of constitutional dimension, and that it actually affected his rights at trial. State v. Kirkman, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007). If we determine that the claim raises a manifest constitutional error, it may still be subject to harmless error analysis. Id. at 927.

Kelly argues that his testimony presented evidence that raised the issue of self-defense, warranting an instruction. When self-defense is properly raised, due process requires the State to disprove it beyond a reasonable doubt. See State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). To properly raise self-defense, a defendant need only produce any evidence tending to prove that the act was done in self-defense. State v. Adams, 31 Wn. App. 393, 395, 641 P.2d 1207 (1982). However, the defendant bears the initial burden of presenting enough evidence to establish a prima facie case of self-defense. State v. Janes, 121 Wn.2d 220, 237, 850 P.2d 495 (1993).

3

A defendant presents a prima facie case of self-defense with evidence that (1) he subjectively feared that he was about to be injured; (2) his belief was objectively reasonable; (3) he used no more force than necessary; and (4) he was not the aggressor. State v. Callahan, 87 Wn. App. 925, 929, 943 P.2d 676 (1997). An instruction not supported by evidence of each element is improper. See State v. Gogolin, 45 Wn. App. 640, 643, 727 P.2d 683 (1986).

Courts properly refuse to give self-defense instructions where the defendant's story is inconsistent with self-defense, even if the defendant's testimony contains elements of self-defense. See id. In Gogolin, the defendant was charged with assaulting his ex-wife. 45 Wn. App. at 641. He testified that she attacked him and that he was just trying to get away from her when he raised his hands to push her off of him. Id. at 642. He did not know if he actually touched her, but she fell backward down the stairs. Id. The trial court refused to give a self-defense instruction. Id. at 643.

On appeal, the defendant claimed that he was denied due process because his testimony presented some evidence of self-defense. Id. We affirmed, observing that the defendant's testimony was not that he used force against his wife, but that she fell accidentally. Id. 643-44. That testimony did not support a self-defense instruction, so we held that the trial court properly refused to give one. Id.

Kelly contends that his testimony about Becktell threatening him and reaching for what could have been a weapon presented some evidence of self-defense, entitling him to a self-defense instruction. Kelly testified that, fearing injury, he slapped at Becktell's arms. But, Kelly specifically denied punching Becktell's face, which was the basis of the

4

assault charge. Like the defendant in <u>Gogolin,</u> Kelly's denial prevents him from making out a prima facie case of self-defense.

Because Kelly failed to properly raise self-defense, due process did not require the State to disprove it. No jury instruction was required. The absence of such an instruction was thus not of constitutional magnitude, so we decline to review this assignment of error.

## II.   Evidentiary Ruling

Kelly next argues that the trial court violated ER 402,[1] ER 403, and the Fourth Amendment by allowing Officers Vermeulen and Wellington to testify that they received no response when they first knocked on Kelly's door.

An objection must be made at trial to preserve an evidentiary error for appeal. ER 103. However, the party losing a motion in limine is deemed to have a standing objection where the court has made a final ruling on the motion, and has not instructed counsel that further objections will be required during trial. <u>State v. Powell</u>, 126 Wn.2d 244, 256, 893 P.2d 615 (1995).

Kelly moved in limine to exclude the officers' testimony as irrelevant under ER 401 and unfairly prejudicial under ER 403. He lost, and the trial court did not instruct him that further objections would be necessary. His assignments of error based on the rules of evidence were thus preserved for review.

---

[1] Kelly's pretrial motion argued that the testimony did not meet the definition of relevance under ER 401. Irrelevant evidence is inadmissible under ER 402. While Kelly did not explicitly cite ER 402 at trial, he clearly sought ER 402's exclusionary effect.

However, he raises his constitutional challenge to the trial court's evidentiary ruling for the first time on appeal, so that challenge, like his self-defense claim, is subject to RAP 2.5(a).

A. Fourth Amendment

The Fourth Amendment protects a person's right not to respond to police officers knocking at the door without a warrant. See Kentucky v. King, __ U.S. __, 131 S. Ct. 1849, 1862, 179 L. Ed. 2d 865 (2011). Kelly contends that the testimony penalized his exercise of this right. We disagree.

In State v. Lewis, a police witness testified that he had phone conversations with the defendant, wherein he told the defendant that "if he was innocent he should just come in and talk." 130 Wn.2d 700, 702-03, 927 P.2d 235 (1996). The court concluded that, absent statements by the officer that the defendant refused to talk, or that his silence implied guilt, the officer's testimony did not comment on the defendant's rights. Id. at 705-06.

Similarly, the statements Kelly challenges did not comment on his exercise of a constitutional right. The testimony consisted of a few statements by the officers that when they first knocked on Kelly's door, they received no response. The officers did not testify, for example, that Kelly was home and refused to answer the door. Nor did the prosecutor state in closing that Kelly was hiding from the police. Moreover, Kelly testified that he was on a walk when the officers first attempted to contact him. Thus, according to Kelly, he was not even home to exercise his Fourth Amendment right. As with his self-defense argument, Kelly's own testimony demonstrates that there was no error of constitutional magnitude.

B. ER 402 and 403

Kelly also argues that the officers' testimony was irrelevant and unfairly prejudicial, so the trial court violated ER 402 and 403 by admitting it. We review a trial court's evidentiary rulings for an abuse of discretion. State v. Finch, 137 Wn.2d 792, 810, 975 P.2d 967 (1999). A court abuses its discretion when its ruling is "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" State v. Downing, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004) (quoting State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). The appellant bears the burden to prove an abuse of discretion. State v. Hentz, 32 Wn. App. 186, 190, 647 P.2d 39 (1982), reversed on other grounds, 99 Wn.2d 538, 663 P.2d 476 (1983). Even if we find actual error with an evidentiary ruling, the error only requires reversal if, within reasonable probability, it materially affected the outcome of trial. See State v. Stenson, 132 Wn.2d 668, 709, 940 P.2d 1239 (1997).

1. Relevance Under ER 401 and 402

Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. ER 401. Irrelevant evidence is not admissible. ER 402. "The threshold to admit relevant evidence is very low. Even minimally relevant evidence is admissible." State v. Darden, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002).

Kelly argues that the officers' comments were not relevant to any material issue. The State argues that the testimony was relevant because it described the police investigation.

The relevance of evidence depends on the circumstances of each individual case and the relationship between the facts and the ultimate issue. Davidson v Mun. of Metro. Seattle, 43 Wn. App. 569, 573, 719 P.2d 569 (1986). In State v. Perez-Arellano, the trial court allowed officers to testify that they believed a park to be a "'high narcotic area,'" which was why they were watching it from a nearby building. 60 Wn. App. 781, 782-83, 807 P.2d 898 (1991). We found the testimony relevant, because it helped jurors to understand the propriety of police procedures, and the circumstances of the arrest. Id. at 784. It did not matter that the evidence did not relate to the defendant's guilt or innocence. Id.

Here, the officers' testimony passes the low threshold for relevance. The testimony did not have to relate to the elements of second degree assault to be relevant. As in Perez-Arellano, the testimony helped the jury understand police procedures. The prosecutor argued that the testimony would explain to the jury that the officers entered Kelly's home lawfully and why they had to get a warrant. Furthermore, the prosecutor argued that she needed the testimony to explain the circumstances of Kelly's arrest and that he was read his rights and chose not to remain silent. The trial court properly accepted this rationale.

Because the evidence of the initial door knock described police procedures and the circumstances leading to Kelly's arrest, Kelly cannot show that the trial court abused its discretion in accepting its relevance.

2. Unfair Prejudice Under ER 403

Relevant evidence may still be inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice. ER 403. "Evidence is not rendered

inadmissible under ER 403 just because it may be prejudicial." Carson v. Fine, 123 Wn.2d 206, 224, 867 P.2d 610 (1994). After all, "nearly all evidence will prejudice one side or the other." Id.

Kelly argues that the officers' comments prejudiced him, because they implied that Kelly was evading the police and had something to hide, which could lead the jury to discredit his testimony. In Seattle v. Boulanger, we held that the municipal court violated ER 403 by allowing an officer to testify that he offered a breathalyzer to the defendant, because the jury might give undue weight to the defendant's implied refusal. 37 Wn. App. 357, 359, 680 P.2d 67 (1984). We stated that a "defendant may have valid reasons for refusing a test, reasons which do not reflect consciousness of guilt." Id. In Perez-Arellano, though, we could not say that the officers' repeated descriptions of the park as a "'high narcotic area'" created prejudice that substantially outweighed the testimony's usefulness to the jury. See 60 Wn. App. at 785.

Here, the officers' testimony was not substantially more prejudicial to Kelly than probative of the circumstances leading to his arrest. The comments were brief, innocuous descriptions of a preliminary part of the police investigation, like the testimony in Perez-Arellano. Even if the jury could have inferred from the comments that Kelly refused to answer the door, and that he did so with a guilty conscience, Kelly minimized any potential prejudice. His testimony explained that no one answered his door because he was not even home, and no one testified to the contrary.

Kelly has not shown that the probative value of the testimony was substantially outweighed by the danger of unfair prejudice. The trial court did not abuse its discretion by admitting the testimony.

9

Kelly's due process and Fourth Amendment challenges are not of constitutional magnitude. And, he has not demonstrated that the officers' testimony was irrelevant or unfairly prejudicial.

We affirm.

Appelwick, J

WE CONCUR:

Spearman, A.C.J.                    Schindler, J