[No. 1611-2.   Division Two.   December 19, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. HARRY EDWARD KERR, *Appellant*.

*Clay Nixon,* for appellant.

*Byron E. McClanahan, Prosecuting Attorney,* and *James B. Sawyer II, Deputy,* for respondent.

PETRIE, C.J.—Harry Edward Kerr appeals from a conviction of manslaughter. He contends the trial court erred by: (1) denying him the defenses that the killing was excusable or justifiable; (2) instructing the jury on intimidation with a firearm; (3) failing to declare a mistrial upon the belated discovery of a remark made by a juror prior to empaneling; and (4) failing to grant a new trial on the grounds the jury had reached the point of exhaustion when it returned its verdict. We find no error and affirm the conviction.

Because the trial court decided as a matter of law that there was insufficient evidence to support the defendant's two major defenses—excusable or justifiable homicide—we consider the facts in a light most favorable to the defendant.

The defendant resides on a wooded parcel in Grapeview. His property is bounded on the north by property owned by one Nicklaus. Both properties contain vegetation such as huckleberry and salal, the harvesting of which by "brush pickers" constitutes a substantial industry in southwestern Washington. Brush pickers may harvest brush on another's land only when the owner of the land has executed a "harvesting permit" to the pickers pursuant to provisions of chapter 76.48 RCW. Permit forms are provided by the Department of Natural Resources in triplicate, one copy of which is filed with the local sheriff. The industry is plagued, nevertheless, by "brush poachers" who stealthily and rapaciously harvest brush without obtaining either permits or property owners' permission.

On December 20, 1971, Kerr observed a brush poacher on his property. The poacher wore a yellow raincoat and aluminum hard hat, but his features could not be clearly delineated from Kerr's observation point in the woods. After a call to the sheriff's office, Kerr returned to the woods, in-

tending to hold the trespasser by intimidation with his shotgun until a deputy arrived. The man was gone, however, when Kerr returned.

George Davidson, a brush picker, had acquired the habit of stopping for coffee at the Deer Creek Store. On the morning of December 22, he told the store's proprietress, Gloria Nelson, that he had been threatened recently by Mr. Kerr and was afraid he would be shot, but he intended to pick on the adjacent Nicklaus property. Davidson then possessed a valid permit to harvest brush on the Nicklaus property.

At about 10:30 a.m. on December 22, the defendant took a shotgun on a foray into his woods to "see how much brush [the man seen on December 20th] had removed." Abruptly he encountered a brush picker whom he believed to be on his property without permission and who was dressed exactly as the other trespasser had been. Kerr followed the man and observed him undetected until he had accumulated an armload of brush. Kerr jumped from behind some trees with shotgun in hand and yelled at the intruder, walking about 40 feet away: "Hold it right there." The man dropped the brush and ran up a trail. Meanwhile, Kerr ran to the pile of brush and shouted: "Halt, or I will shoot." He fired a warning shot somewhat to the right of the fleeing trespasser and then began running up the trail. Abruptly, the man stopped, turned his head, pointed farther up the trail, and said: "I want to get to my car." Kerr responded in essence that he was going to take the trespasser to his house and call the sheriff. The man replied he would not go. After an uneasy silence, the intruder came slowly down the trail. Kerr pointed the gun toward the man's feet and backed off the trail a few feet to let him pass, intending to march him to the house. As the trespasser came within 8 feet of Kerr, he suddenly lunged toward Kerr, who jumped back. Kerr's feet became entangled in brush and he fell backward. As he did so, the shotgun accidentally discharged, and the trespasser, George

Davidson, was killed almost instantaneously by the shot in his upper abdomen.

By an amended information filed in Mason County, Mr. Kerr was charged with second-degree murder. The jury found him guilty of manslaughter. On appeal he asks this court to reverse the judgment and remand the case for a new trial. We consider, first, his contention that the jury should have been permitted to determine whether the homicide was excusable or justifiable.

The defendant's theory is that the jury should have been permitted, in view of testimony that brush picking is an $8 million annual industry in southwestern Washington, and that brush poaching constitutes a one-half million dollar loss to landowners, to determine for itself whether Kerr could have been using his shotgun to make a lawful arrest for a felony being committed in his presence. If so, he would be exonerated for an accidental killing.

In the trial of a criminal case, the court must instruct the jury on the law as to any legitimate defense advanced by the defendant when there is evidence to support that theory. However, when a trial court determines, in a homicide case, that there is no evidence to support a finding of justifiable or excusable homicide, it may remove those issues from the jury's consideration. *State v. Griffith*, 52 Wn.2d 721, 328 P.2d 897 (1958); *State v. Hartley*, 25 Wn.2d 211, 170 P.2d 333 (1946).

Justifiable homicide implies an *intentional* act of killing which is, nevertheless, justified by exigent circumstances enumerated by statute. *State v. Clarke*, 61 Wn.2d 138, 377 P.2d 449 (1962). *See also New York Life Ins. Co. v. Jones*, 86 Wn.2d 44, 541 P.2d 989 (1975). In the case at bench, Kerr insisted repeatedly that he did not intend to shoot (much less to kill) Davidson—that it was an accident. It is apparent, therefore, that the defendant was not relying upon a defense that he *intentionally killed* Davidson and was justified in doing so. Rather, he contends that Davidson's death occurred by accident or misfortune and the law holds Kerr *excused*. Accordingly, the trial court

properly removed the defense of justifiable homicide from the jury's consideration.

Excusable homicide, on the other hand, is defined by RCW 9.48.150 as one "committed by accident or misfortune in doing any *lawful act by lawful means*, with ordinary caution and without any unlawful intent." (Italics ours.) A citizen may use deadly force in attempting to effect an arrest for a felony committed in his presence, just as an officer is so privileged, and the unintended death of the felon is excusable. *State v. Clarke, supra.* We accept Mr. Kerr's assertions that he had no unlawful intent and that he was proceeding with ordinary caution, and we resolve any doubts on those issues in his favor. The real question, then, is whether Mr. Kerr was performing a "lawful act by lawful means" when, armed with a shotgun, he attempted to arrest Mr. Davidson.

Mr. Kerr recognizes that his attempted arrest of Mr. Davidson by the threatened use of a deadly weapon is lawful, under the facts of this case, only if there is evidence that Davidson was committing a felony at the time of the encounter between the two men. He relies upon RCW 9.61.040(1) and 9.61.070(3)[1] for the proposition that the felony of malicious destruction of property is committed when a person cuts down, injures, or destroys a wood or crop valued at over $250 and belonging to another.

---

[1] RCW 9.61.040 provides in part:

"Every person who shall wilfully—

"(1) Cut down, destroy or injure any wood, timber, grain, grass or crop, standing or growing, or which has been cut down and is lying upon the lands of another, or of the state; or,

" . . .

"Shall be guilty of a misdemeanor or, if there is actual physical injury to or destruction of any real or personal property, of property destruction and shall incur the penalties set forth in RCW 9.61.070."

RCW 9.61.070 provides in part:

"Every person who shall wilfully or maliciously destroy or injure any real or personal property of another, for the destruction or injury of which no special punishment is otherwise specially prescribed, shall—

" . . .

"(3) If the value of the property destroyed, or the diminution in value by the injury, shall be two hundred fifty dollars or more, be guilty of a felony."

■ The defendant's attempt to find legal excuse in RCW 9.61 is misplaced. Prior to 1967, RCW 9.61.040(1) conceivably could have been construed to forbid brush thievery, such as Kerr attributed to Davidson. In 1967, however, the legislature enacted RCW 76.48.020 and .030, which *specifically* outlaw the practice of cutting and destroying *brush* without a lawful permit.[2] Chapter 76.48 RCW creates misdemeanors only.[3]

Kerr urges upon us, nevertheless, that Davidson's acts constituted malicious destruction of property of the value of more than $250, as forbidden by RCW 9.61.070(3) because chapter 76.48 RCW was not intended to repeal or modify any provision of existing law. RCW 76.48.910. That contention, too, is misplaced because RCW 9.61.070 indicates, on its face, that it applies *only* where "no special punishment is otherwise specially prescribed, . . ." It does not apply where destruction of or damage to property specifically enumerated in RCW 9.61.*040* is concerned. *State v. Seger*, 1 Wn. App. 516, 463 P.2d 185 (1969). Much less does it apply to illegal brush picking or cutting, because RCW 76.48 does provide a "special punishment" for such conduct.

Even assuming that Kerr's reliance on RCW 9.61 is not misplaced, there is no evidence in the record to establish that Davidson at any time destroyed or picked more than

---

[2]RCW 76.48.020 provides in part as a definition:

"(3) 'Cut or picked evergreen foliage,' commonly known as brush, shall mean evergreen boughs, huckleberry, salal, fern, Oregon grape, scotchbroom, rhododendron, and other cut or picked evergreen products."

RCW 76.48.030 provides:

"It shall be unlawful for any person to cut, destroy, mutilate, pry, pick, peel, break, or remove specialized forest products as described in RCW 76.48.020 without first obtaining a harvesting permit from the permittor."

[3]RCW 76.48.130 provides:

"Any person who violates any provision of this chapter shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than twenty-five dollars nor more than two hundred and fifty dollars or by imprisonment in the county jail for not to exceed ninety days or by both such fine and imprisonment."

$5 worth of brush. Further, it appears doubtful either that he *picked any brush* on Kerr's property or that the fatal shooting occurred on Kerr's property.

We hold that the court properly removed the consideration of excusable homicide from the jury.

The defendant challenges the court's instruction which provided:

> It shall be unlawful for anyone to carry, exhibit, display or draw any firearm capable of producing bodily harm, in a manner, under circumstances, and at a time and place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons.
> The foregoing offense is not a felony.

This instruction paraphrases the provisions of RCW 9.41.270, which prohibits the unlawful display of certain weapons under circumstances that manifest an intent to intimidate another. Violation of the statute is a gross misdemeanor, but the statute also provides that the otherwise prohibited action does not apply when the person displaying the weapon is in the act of making or assisting in making a lawful arrest for the commission of a felony. RCW 9.41.270(3)(d).

The defendant's contention on appeal is that the instruction is an improper statement of the law because he *was* in the act of arresting a felon. We have held otherwise. In view of Mr. Kerr's reiterated testimony that he carried the gun only to intimidate Davidson, the first sentence of the instruction, at least, should have been given. The second sentence, when read in context with the first, presented a dilemma to Mr. Kerr, which the trial court and defendant's counsel both perceived.

On the one hand, the instruction provided a basis for arguing that the defendant should not be convicted of second-degree murder "while engaged in the commission of a felony." On the other hand, the instruction provided the prosecution with a strong argument that Kerr should be convicted of manslaughter because Davidson's death oc-

curred while Kerr was engaged in the commission of an unlawful act not amounting to a felony.

■ Confronted with this dilemma, Kerr's counsel initially objected. However, when the trial court indicated an intention to honor the defendant's objection, counsel reconsidered and withdrew his objection. Having withdrawn the objection to the instruction, the defendant cannot now predicate error upon its use. CR 51(f); *O'Brien v. Artz*, 74 Wn.2d 558, 445 P.2d 632 (1968).

■ The remaining assignments of error may be disposed of briefly. In the courtroom prior to voir dire, one juror remarked: "Here comes the enemy" as defense counsel entered the courtroom. The comment came to light after the jury had been sworn. A motion for a mistrial based on juror misconduct was denied by the court, which noted that the remark was made laughingly, and further, that the juror had responded humorously to questions on voir dire. Although the juror may not have been properly solemn during jury selection, he was questioned fully by both sides and specifically responded that he had no prejudice against the defendant nor his attorney. A juror holding certain preconceptions is not disqualified, provided he can put these ideas aside and decide the case on the basis of the evidence and the law as instructed by the court. *State v. White*, 60 Wn.2d 551, 374 P.2d 942 (1962). Granting or denying a mistrial founded upon alleged jury misconduct is a discretionary function of the trial court. Unless it clearly appears the court abused its discretion, the ruling will not be disturbed. *Fleenor v. Erickson*, 35 Wn.2d 891, 215 P.2d 885 (1950). We find no substantiation in the record that this juror harbored an improper bias against the defense. The court's ruling was proper.

The defendant's final assignment is based on the fact the jury deliberated from 4:12 p.m. to the early morning hour of 2:45, following 9 days of trial. He argues that the verdict was returned at the point of the jurors' exhaustion, as evidenced by the youngest juror's response to a post-verdict question: "I just can't remember; I am too tired to

think." Three jurors were 65 years of age or older, and Kerr contends their exhaustion must have been too extreme for a rational verdict.

We decline to join in this presumption. The record is devoid of anything to support Kerr's allegation that the verdict should be impugned because of juror exhaustion. Nor has authority been cited on the issue. There is not the slightest indication that the trial court coerced the jury into reaching a verdict before being allowed to leave the courthouse. We will not reverse the court's denial of a new trial merely because a juror expressed fatigue at a late hour.

Judgment affirmed.

PEARSON and REED , JJ., concur.

Petition for rehearing denied February 9, 1976.

Review denied by Supreme Court April 23, 1976.