[No. 13019–6–I. Division One. May 9, 1984.]

THE STATE OF WASHINGTON, *Appellant,* v. ALLEN NEGRIN, *Respondent.*

*E. H. Knapp, Jr., Prosecuting Attorney,* and *Charles Z.*

*Silverman, Deputy,* for appellant.

*David Allen,* for respondent (counsel for appeal only).

RINGOLD, J.—Allen Negrin was found guilty by jury verdict of first degree manslaughter. The trial court granted Negrin's motion for a new trial because of errors in the self–defense instructions. The State appeals, arguing that the instructions correctly set forth the applicable law. Negrin cross–appeals, assigning error to the court's rulings on other instructions and evidentiary issues, and challenging the sufficiency of the evidence. We affirm the trial court in all respects.

Allen Negrin and a woman friend went to Negrin's secluded cabin on San Juan Island on August 15, 1982, arriving after sunset. When he entered the cabin, Negrin saw evidence of a burglary. He checked the area, then went back to the car to walk his friend to the house. On their way in they heard a loud stomping noise near the cabin stairs.

Negrin's friend testified that they later heard a noise like branches shaking, which scared them. Despite repeated calls of "Who are you? Identify yourself," there was no answer. She stated that she asked Negrin if he had a gun, and he then took out and loaded a .22 rifle. Negrin testified that he fired several warning shots after receiving no answer to his inquiries. Both said that there was a shouted response to the warning shots, and that the speaker sounded drunk.

Negrin called for emergency help on his CB radio. While he operated the radio, his friend waited by the door with the gun. She testified that she told Negrin "he's coming" because she heard a sound like movement and she was scared and upset. Negrin stated that he shouted warnings from the doorway and then fired more warning shots. He testified that he felt that he had no alternative to firing the shots because he believed that someone was coming at him and he thought he needed to protect himself and his friend.

After firing they heard sounds as if someone had been hit. Negrin went out to investigate and discovered a body later identified as Ron Woolf.

Upon Negrin's plea of self–defense the trial court submitted self–defense instructions to the jury. Negrin was convicted of first degree manslaughter, but received a new trial because of instructional error.

### SELF–DEFENSE INSTRUCTIONS

The court's instructions 14 and 15 read:

It is a defense to a charge of manslaughter that the homicide was justifiable as defined in this instruction.

Homicide is justifiable when committed in the lawful defense of the slayer or any person in the slayer's presence when the slayer reasonably believes in light of all of the facts and circumstances known to him, that the person slain *intends* to commit a felony of a violent nature or to inflict death or great bodily harm; and there is imminent danger of such harm being accomplished.

The slayer may employ such necessary force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the slayer at the time.

(Italics ours.) Instruction 14.

To justify killing in self–defense, there need be no actual danger to the life or person of the slayer, but there must be, or reasonably appear to be under all of the surrounding circumstances, some overt act or some circumstances which would reasonably indicate to the slayer that the person slain *is attempting* to kill or to inflict great bodily harm upon him. Fear alone will not justify a homicide unless there are reasonable grounds therefore.

The right of self–defense is given only in emergencies to enable persons who are attacked, and to whom it may reasonably appear that their lives are endangered or their bodies are in danger of great physical injury, to defend themselves. The right is limited to the emergency and ends when the emergency ceases. The right is based upon what a reasonable person, having due regard for human life and safety, would do under similar circumstances.

(Italics ours.) Instruction 15.

The trial judge awarded a new trial on the basis of

instructional error, stating that the use of "intends" in instruction 14 and "attempting to" in instruction 15 could have misled the jury because

> 'To intend to' refers to setting the mind upon to accomplish, while 'to attempt to' refers to an endeavor to effect. The former connotes a mental attitude and the latter a physical gesture. To put it another way, an attempt is more than mere preparation.

The State argues that the trial court's distinction between intent and attempt was improper because the self–defense standard is whether the slayer honestly believed, under all known circumstances, that there was imminent danger of grievous bodily harm, and whether there were reasonable grounds for this belief. *State v. Wanrow,* 88 Wn.2d 221, 559 P.2d 548 (1977). According to the State, instruction 15 merely sets out a standard for assessing imminent danger; "attempting to" as used in instruction 15 encompasses the intent to achieve an end combined with some conduct corroborating that intent. *State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978). The State contends that instruction 15 did not require an overt act, but pro-vides for "circumstances" or a reasonable anticipation that "circumstances" would immediately follow. The defendant was able to argue his theory of the case under these instructions, according to the State.

The legal definition of attempt was not given to the jury. In the absence of a specific instruction defining a statutory term or instruction, it is presumed that the everyday meaning applies. *State v. Pawling,* 23 Wn. App. 226, 233, 597 P.2d 1367 (1979); *cf. East v. King Cy,* 22 Wn. App. 247, 589 P.2d 805 (1978) (unambiguous statutory lan-guage given dictionary meaning). The difference between intent and attempt, as noted by the trial court, is that intent is the mental state of planning to achieve a goal, while attempt is an actual effort to achieve that goal. The use of force is justified when two elements are present: "reasonable ground[s] to apprehend a design on the part of the person slain to commit a felony or to do some great

personal injury . . ."; and "imminent danger of such design being accomplished". RCW 9A.16.050(1). The "imminent danger" prong requires the jury to find that the victim honestly and reasonably believed that the aggressor intended to inflict serious bodily injury in the near future. LaFond, *Self–Defense and Deadly Force,* 6 U. Puget Sound L. Rev. 237, 248 (1983).

It is not essential that the aggressor actually be making an *attempt* to inflict injury in the sense of engaging in physical activity furthering that goal. Threats and intimidation coupled with possession of a firearm, for example, might not constitute an "attempt" in the common sense of "trying" or "endeavoring" to reach a goal, but could be a sufficient basis for a self–defense claim because the circumstances created a reasonable expectation of imminent danger. Instructions 14 and 15 could have led the jury to believe that self–defense was available only if some actual, physical attempt was being made, and was not available if there was merely intent plus imminent danger.

The problem with the instructions is exacerbated by the language in the second paragraph of instruction 15 that "The right of self–defense is given only in emergencies to enable persons *who are attacked, . . .* The right is limited to the emergency and ends when the emergency ceases." (Italics ours.) This part of the instruction strengthens the impression that some physical action or attempt must be in progress before self–defense is justified.

The standard of review is whether the instructions are correct as a matter of law. *State v. Williams,* 96 Wn.2d 215, 634 P.2d 868 (1981). Using this standard, we find that the instructions were incorrect, and the trial court correctly awarded a new trial.[1]

---

[1]The correct statement of the law was contained in the defendant's proposed instructions:

"It is a defense to a charge of manslaughter that the homicide was justifiable as defined in this instruction.

"Homicide is justifiable when committed in the lawful defense of the slayer or any person in the slayer's presence or company when the slayer has reasonable

## NOT HARMLESS ERROR

The State next argues that the error, if any, was harmless under the test set out in *State v. Britton,* 27 Wn.2d 336, 341, 178 P.2d 341 (1947). The State also contends that any error in instruction 15 was cured by instruction 14, because it is not prejudicial error when the instructions, considered as a whole, fairly state the law. *State v. Stafford,* 44 Wn.2d 353, 267 P.2d 699 (1954). The State reasons that any error was harmless because Negrin was not entitled to a self–defense instruction as there was no evidence on which a self–defense claim could be based. *State v. Griffith,* 91 Wn.2d 572, 589 P.2d 799 (1979). The State argues that, even if Negrin's version of the incident is accepted, a reasonably prudent person in Negrin's shoes could not find imminent danger of great bodily harm.

■ There is a test for reviewing instructions:

> When the record discloses *an error in an instruction* given on behalf of the party in whose favor the verdict was returned, the error is *presumed to have been prejudicial,* and to furnish ground for reversal, unless it affirmatively appears that it was harmless.
>
> . . .
>
> A harmless error is an error which is *trivial,* or *formal,* or *merely academic,* and was not prejudicial to the substantial rights of the party assigning it, and *in no way affected the final outcome of the case.*

(Citations omitted.) *Wanrow,* at 237. Thus error here is presumptively prejudicial. The use of the word "attempt" is especially damaging in light of the facts of this case. Negrin

---

ground to believe that the person slain intends to inflict death or great bodily harm and there is imminent danger of such harm being accomplished.

"The slayer may employ such force and means as a reasonably prudent person would use under the same conditions as they appeared to the slayer at the time." WPIC 16.02.

"It is a defense to a charge of manslaughter that the homicide was justifiable as defined in this instruction.

"Homicide is justifiable when committed in the actual resistance of an attempt to commit a felony upon the slayer, in the presence of the slayer or upon or in a dwelling or other place of abode in which the slayer is present." WPIC 16.03.

testified that he fired because he was afraid, and believed that he needed to protect himself. The "assailant" was in the woods and was not, according to the record before us, making an actual physical effort to attack at the time Negrin fired the rifle. The difference between "intent" and "attempt" could be critical under the facts of this case. The error was not trivial or formal, and could have affected the outcome of the trial.

The State, relying on *State v. Kerr,* 14 Wn. App. 584, 587, 544 P.2d 38 (1975), also argues that Negrin was not entitled to a justifiable homicide instruction because justifiable homicide requires an intentional killing and Negrin testified that the death was accidental. *Kerr* is distinguishable. In *Kerr,* there was uncontradicted testimony that the defendant fired his rifle accidentally; that he did not intend to shoot at all. The court ruled that the applicable defense was "excuse," not "justifiable homicide." Here, Negrin testified that he intentionally fired the rifle in the air to warn off the unknown intruder and the shot accidentally struck Woolf. The question still remained for the jury to consider whether firing the gun under the circumstances intending to strike the intruder constituted justifiable homicide.

The "to convict" instruction included "recklessness" as an element of the charge. Based on the evidence presented at trial, Negrin was entitled to have the jury consider the claim that he acted in self-defense in firing the gun, which negates the element of recklessness. *State v. Hanton,* 94 Wn.2d 129, 133, 614 P.2d 1280, *cert. denied,* 449 U.S. 1035 (1980).

The issue of self-defense is properly raised if the defendant produces "any evidence" tending to show self-defense. *State v. Adams,* 31 Wn. App. 393, 395, 641 P.2d 1207 (1982). In *Adams* this court held it was error to refuse self-defense instructions when the defendant testified that he observed the decedent robbing his trailer, was "very scared," and "unintentionally fired one fatal shot." The court said "[O]nly where no plausible evidence appears in the record upon which a claim of self-defense might be

based is an instruction on [self–defense] not necessary. . . . A defendant's testimony alone is sufficient to raise the issue of self–defense." (Citations omitted.) *Adams,* at 396. Similarly, Negrin's testimony was sufficient to raise the issue of self–defense; he was entitled to the instruction.

## CROSS APPEAL

Negrin assigns error to the court's instruction 14, which limits self–defense to responding to felonies "of a violent nature," and to instruction 13 on necessary force and degree of force. He also assigns error to the court's refusal to give his requested instruction defining great bodily harm. Negrin did not object to the court's rulings at trial, and may not challenge them for the first time on appeal. RAP 2.5; *State v. Shannon,* 100 Wn.2d 26, 666 P.2d 351 (1983). Additionally, our review of the record indicates that the court did not err in these rulings.

 Negrin also challenges the sufficiency of the evidence arguing that the State did not present a prima facie case and that there was insufficient evidence to send the case to the jury. Negrin did not make a motion for a directed verdict at trial, or otherwise challenge the sufficiency of the evidence. Because this issue concerns the State's duty to prove every element of the charge, implicating the defendant's due process rights, it may be raised for the first time on appeal. *State v. Baeza,* 100 Wn.2d 487, 488, 670 P.2d 646 (1983). The standard of review is whether, viewing the evidence most favorably to the State, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980).

Negrin admitted firing the shot that killed Woolf, and pleaded justifiable homicide. If Negrin acted recklessly, or without reasonable grounds to fear imminent danger, the justifiable homicide defense fails. It is the province of the jury to determine such issues. *State v. Clarke,* 61 Wn.2d 138, 141, 377 P.2d 449 (1962); *Wanrow,* 88 Wn.2d at 238. There was sufficient evidence to send the case to the jury.

Finally, Negrin contends that the court erred in restricting testimony about Woolf's reputation for violence to reputation evidence. Negrin argues that the court should have allowed a witness to testify that Woolf told him that "the decedent was going to cause someone to, in a confrontation, to shoot him." Negrin argues that such evidence is admissible under ER 404(b) to show Woolf's intent that evening, and that the State opened the door to this evidence by stating that "Ron Woolf did not deserve to die." Negrin characterizes it as relevant "res gestae type" evidence.

Negrin's offer of proof reads in full:

And, your honor, incidentally, there's going to be another gentleman who's going to testify, and I discovered this person, his name is Dan Kerr, through reports supplied to me by Mr. Silverman. And in fact, in these very police reports, Dan Kerr, states that the decedent told Kerr about the fact that the decedent was going to cause someone to, in a confrontation, to shoot him.

Counsel went on to state that "these kind of incidents" are relevant on the decedent's state of mind under *State v. Parr,* 93 Wn.2d 95, 606 P.2d 263 (1980). In an earlier discussion about the sheriff's testimony the parties discussed the applicability of ER 404. The court ruled that general reputation testimony about the decedent's reputation for violence was admissible on the issue of whether there was aggression, but not on Negrin's apprehension of danger. Counsel did not attempt to call Kerr or except to the ruling.

An offer of proof should

inform the court of the legal theory under which the offered evidence is admissible . . . inform the trial judge of the specific nature of the offered evidence so the court can judge its admissibility . . . [and create] a record adequate for appellate review.

*Mad River Orchard Co. v. Krack Corp.,* 89 Wn.2d 535, 537, 573 P.2d 796 (1978). Question and answer testimony by the witness is preferable to conclusory statements by counsel. *Mad River,* at 537; 5 K. Tegland, Wash. Prac., *Evidence* § 12, at 41 (2d ed. 1982).

Negrin's offer of proof is inadequate. It does not specify what Kerr's testimony would have been, give any information on the reliability or credibility of the witness, or adequately inform the trial court of the legal theory supporting admissibility of the proffered hearsay testimony. Negrin did not urge a res gestae theory at trial and, therefore, may not argue such a theory on appeal. K. Tegland, at 42; *State v. Wilson,* 16 Wn. App. 434, 557 P.2d 18 (1976), *review denied,* 88 Wn.2d 1015 (1977), and cases cited.

Had the offer of proof been adequate, the proffered testimony would not be relevant on the issue of Negrin's apprehension of danger, because Negrin testified that he did not know who was outside the cabin. Based on the evidence before it, the trial court correctly excluded the testimony.

The order for a new trial is affirmed, and, on Negrin's cross appeal, we affirm the trial court's rulings.

WILLIAMS and CALLOW, JJ., concur.

Review denied by Supreme Court July 13, 1984.