[No. 25220-1-II. Division Two. June 21, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. NATHAN D. BRIGHTMAN, *Appellant*.

*Nathan D. Brightman,* pro se.

*Kevin R. Cole* (of *Griffith & Cole, P.L.L.C.*), for appellant (appointed counsel for appeal).

*Gerald A. Horne, Prosecuting Attorney,* and *John C. Hillman, Deputy,* for respondent.

ARMSTRONG, J. — Nathan Brightman killed Dexter Villa when a gun he brandished during a fistfight with Villa went

off. Brightman said he did not mean to shoot Villa; the gun discharged accidentally. The court refused to instruct on justifiable homicide, ruling that Brightman acted neither in self-defense nor to prevent a violent felony. On appeal from his conviction of second degree murder, Brightman challenges this ruling and also argues that (1) the judge denied him a public trial by excluding friends and relatives from the courtroom during voir dire; (2) the prosecutor asked an improper question; (3) the judge improperly commented on the evidence; and (4) the judge should have instructed on second degree manslaughter as a lesser included offense. Pro se, Brightman maintains that the evidence was insufficient, his counsel was ineffective, and cumulative error mandates a new trial. We find no reversible error and, thus, affirm.

## FACTS

Nathan Brightman talked Dexter Villa into giving him a ride from Tacoma Community College to Gig Harbor, offering to pay $27 for the ride. Villa drove to Titlow Park and parked. He and Brightman began fighting in the car, and one of them yelled for help. The two men got out of the car and continued the fistfight near the front driver's side of the car. Neither man was clearly winning.

Brightman then raised his hand to Villa's head, a gunshot sounded, and Villa fell. Brightman bent down over Villa; then he stood up, pulled his coat over his face, and fled in Villa's car. Brightman headed home over the Narrows Bridge, evading a traffic stop and tossing the gun into the Puget Sound on the way. He abandoned Villa's car about a mile from his home.

Brightman's story was that he offered Villa $7 for a ride home to Gig Harbor. Once in the car, Villa told Brightman he could get him some marijuana, and Brightman gave him $20 to do so. But when they parked near Titlow Park, Villa ordered Brightman to get out of the car. Brightman refused until Villa returned the money, and a scuffle ensued.

The fight continued outside the car. Although Brightman was not afraid of Villa, he took out a gun and told Villa to back away. When Villa did not, Brightman hit him twice with the gun. He thought the gun was unloaded. The second time he hit Villa, the gun accidentally went off. Brightman panicked and drove home.

The State charged Brightman with first degree murder, claiming he planned the killing. Before voir dire, the court told the parties they could not have observers in the courtroom while they were selecting a jury because the courtroom would be too crowded and security was a problem.

During the State's cross-examination, after Brightman said he was sorry that Villa died, the prosecutor asked Brightman why he had blown a kiss to Villa's estranged wife. Brightman did not immediately object, but he moved for a mistrial the next day. The court denied the motion.

At the close of the evidence, the court ruled that self-defense was not an issue in the case. It reasoned that because Brightman did not fear imminent death or great bodily harm, he had no self-defense claim. The court refused Brightman's proposed instruction on justifiable homicide, and instead it instructed the jury that justifiable homicide, as a matter of law, did not apply to this case. The court also declined to give Brightman's proposed second degree manslaughter instruction, ruling that there was no evidence that Brightman was negligent rather than reckless.

The jury convicted Brightman of second degree murder. It also found that he was armed with a deadly weapon. On appeal, Brightman contends that the trial court erred by denying the two instructions, improperly commenting on the evidence by instructing as a matter of law that justifiable homicide did not apply, and denying his right to a public trial by closing voir dire. He also claims that the prosecutor improperly asked about the unproven "blowing a kiss." Report of Proceedings at 1113-14. Pro se, Brightman argues that the evidence was insufficient, the court should

have instructed on self-defense, his counsel was ineffective, and the court committed cumulative error.

## ANALYSIS

### Justifiable Homicide Instruction

Brightman claims that the trial court should have instructed on justifiable homicide.[1] The trial court ruled that self-defense was not at issue because Brightman said he was not afraid of Villa. Brightman contends that he was resisting an attempted felony and, thus, did not need to show that he feared death or serious harm.

██ An instruction is appropriate if it informs the jury of the applicable law, is not misleading, and allows the defendant to argue his theory of the case. *State v. Tili*, 139 Wn.2d 107, 126, 985 P.2d 365 (1999). We review de novo the trial court's decision on what instructions to give. *State v. Walker*, 136 Wn.2d 767, 772, 966 P.2d 883 (1998).

A. Intent and Justification

Brightman testified that he did not mean to shoot Villa. He thought the gun was unloaded and he intended only to hit Villa with the gun, not to shoot him. Essentially, he claims that the homicide was accidental.

██ A justification defense implies that the defendant meant to kill the victim but had a justifiable reason for so doing. *State v. Kerr*, 14 Wn. App. 584, 587, 544 P.2d 38 (1975). For example, a person is justified in killing to protect himself or others from imminent death or from a felony. RCW 9A.16.050. An excuse defense is different: the law excuses homicide committed by accident if the slayer

---

[1] Brightman's proposed instruction read:

It is a defense to charges of murder and manslaughter that the homicide was justifiable as defined in this instruction.

Homicide is justifiable when committed in the actual resistance of an attempt to commit a felony upon the slayer.

[Paragraph on burden of proof omitted.]

Clerk's Papers at 30.

acted lawfully and without criminal intent or negligence. RCW 9A.16.030.

█ Brightman claimed that he accidentally killed Villa but that he was justified in doing so. We have held that the trial court properly refuses to instruct on justifiable homicide where the defendant insists that the killing was an accident and that he did not intend to kill the victim. *Kerr*, 14 Wn. App. at 587-88.

In *Kerr*, the defendant brandished a gun while attempting to apprehend a trespasser. During a scuffle, the gun accidentally fired and killed the trespasser. Kerr did not intend to shoot the trespasser, so the court refused to allow the jury to consider a defense of justifiable homicide. *Kerr*, 14 Wn. App. at 586-88.

At first glance, *Kerr* seems at odds with our decision in *State v. Callahan*, 87 Wn. App. 925, 943 P.2d 676 (1997). In *Callahan*, the defendant displayed a gun because he feared for his own safety. But, according to the defendant, the gun accidentally went off and injured the victim; Callahan denied intentionally pointing or firing the gun. *Callahan*, 87 Wn. App. at 928. We held that the trial court should have instructed on self-defense because "Callahan subjectively feared that he was in imminent danger of death or great bodily harm; his belief was objectively reasonable, the force used was no greater than necessary, and he was not the first aggressor." *Callahan*, 87 Wn. App. at 933.

As we noted in *Callahan*, Washington courts have approved a justifiable homicide defense where the defendant claims that the injury was accidental, if there is evidence that the defendant initiated the use of force because he subjectively feared for his safety. *Callahan*, 87 Wn. App. at 930-33.[2] Kerr did not fear for his safety; he wanted only to apprehend a trespasser. *Kerr*, 14 Wn. App. at 587-88. But Callahan, who was involved in a hostile confrontation with three men, feared for his safety. *Callahan*, 87 Wn. App. at

---

[2] Citing *State v. Fondren*, 41 Wn. App. 17, 701 P.2d 810 (1985); *State v. Redwine*, 72 Wn. App. 625, 865 P.2d 552 (1994); *State v. Gogolin*, 45 Wn. App. 640, 727 P.2d 683 (1986); *State v. Aleshire*, 89 Wn.2d 67, 568 P.2d 799 (1977).

928. Moreover, in *Callahan*, the victim's testimony that Callahan aimed at his head, "coupled with Callahan's admission that he displayed the weapon, supports the inference that Callahan intentionally exercised force in self-defense." *Callahan*, 87 Wn. App. at 933-34. In other words, although Callahan may not have intended the result, he did intend to brandish the gun, hoping to scare the other men, as a way to defend himself. *Callahan*, 87 Wn. App. at 931. Thus, he initiated the use of force because he feared for his safety.

In contrast, Brightman presented no evidence that he took the gun out and brandished it because he feared for his safety. In fact, he admitted that he was not afraid of Villa. He intended to use the gun as a club, not to meet a threat of deadly force. The trial court properly refused to give a justifiable homicide instruction.

B. Resisting a Felony

██ ██ Moreover, the court properly refused a justifiable instruction because the evidence did not show that Villa was committing a violent felony. Under RCW 9A.16.050(2), homicide "[i]n the actual resistance of an attempt to commit a felony upon the slayer, in his presence" is justifiable. Courts have clarified that the defense is available only when the defendant is resisting a violent felony. For example, adultery is "not a crime of violence and is not the type of felony which will justify the taking of human life." *State v. Nyland*, 47 Wn.2d 240, 242, 287 P.2d 345 (1955). Robbery, however, is one of the " 'class of crimes in prevention of which a man may, if necessary, exercise his natural right to repel force by force to the taking of the life of the aggressor.' " *Nyland*, 47 Wn.2d at 242 (quoting *State v. Moore*, 31 Conn. 479 (1863)).

Brightman maintains that he was resisting a robbery. He argues that even though Villa obtained his money without using force or threatening force, Villa tried to keep the money by force. And, according to Brightman, this amounts to robbery under the statute, which defines robbery as taking or retaining possession of property by force. RCW

9A.56.190; *State v. Handburgh*, 119 Wn.2d 284, 291, 830 P.2d 641 (1992). Thus, concludes Brightman, Villa was robbing him by forcibly retaining possession of the money Brightman gave him to buy marijuana. We disagree.

Accepting Brightman's story, Villa used a ruse to get money from him. At most, Villa committed theft by fraud. RCW 9A.56.020(1)(a), (b). The theft was completed when Brightman gave the money to Villa. That the two men later fought over possession of the money does not turn the theft into robbery. In *Handburgh*, the court held that under the statute's plain language, force used during any part of the transaction, either taking the property or fleeing with it, satisfies the robbery statute. *Handburgh*, 119 Wn.2d at 291. But the court was referring to one continuous trans-action, illustrated by the court's hypothetical of a person who takes money from an unattended cash register but then points a gun at the store owner who confronts him. *Handburgh*, 119 Wn.2d at 290-91. And the facts in *Handburgh* show one continuous transaction of a taking, the owner's chase, and the defendant's use of force to prevent the owner from regaining possession. *Handburgh*, 119 Wn.2d at 285-86. Here, the facts show two separate transactions. Villa peaceably got possession of Brightman's money. Later, Villa refused to deliver the marijuana and Brightman fought to get his money back. At most, Villa committed a theft followed by an assault, not one continu-ous robbery.

Furthermore, even if we considered the incident a rob-bery, not all robberies justify the use of deadly force. Division One of this Court has interpreted the justifiable homicide defense to apply "only if the felony which was sought to be prevented threaten[ed] life or great bodily harm." *State v. Brenner*, 53 Wn. App. 367, 376, 768 P.2d 509 (1989). And our Supreme Court has adhered to the holding of a 1909 case that simple assault or ordinary battery does not justify homicide. *State v. Griffith*, 91 Wn.2d 572, 576-77, 589 P.2d 799 (1979). Brightman was not justified in using deadly force to prevent a fistfight robbery.

Affirmed.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HUNT, C.J., and MORGAN, J., concur.