# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  49259-8-II |
| Respondent, | |
| v. | |
| ROBERT ERNEST VESTRE, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J.  —  Robert Ernest Vestre appeals his convictions and sentences for second degree burglary, first degree theft, and first degree malicious mischief.  Vestre argues that (1) the trial court's denial of his continuance motion violated his rights to present a defense and compulsory process, (2) his counsel provided ineffective assistance at sentencing, and (3) the trial court denied him his right to a unanimous jury verdict.  Vestre also raises numerous claims in his statement of additional grounds (SAG).  We affirm.

## FACTS

### I. BACKGROUND FACTS

On two consecutive days, June 14 and 15, 2015, Vestre, Crista Arends, and Christine Ortiz stripped wire and other items out of the Grays Harbor Historical Seaport Authority building in

Junction City (Seaport Building). Sarah Arends, Crista's[1] daughter, was also present during the events on June 14.

On June 15, law enforcement responded to a report of a burglary outside a different industrial building in Grays Harbor County and arrested Vestre, Crista, and Ortiz. South Bend Police Chief David Eastham located metal materials, a roll of lead sheeting, electrical conduit boxes, and sailing equipment in Crista's truck. The sailing equipment in the truck belonged to the Grays Harbor Historical Seaport Authority.

The State charged Vestre with second degree burglary, first degree theft, and first degree malicious mischief for his conduct at the Seaport Building.

## II. PRETRIAL MOTION FOR CONTINUANCE

On June 7, 2016, Vestre's jury trial was scheduled to begin. That morning, Vestre moved for a continuance to allow him to locate a potential witness. Vestre's counsel argued that the defense had previously investigated a list of potential witnesses who had not provided useful information. Counsel argued that according to Vestre, a newly discovered potential witness, Samantha Phelps, may be able to testify that Sarah planted evidence at Vestre's trailer, which counsel contended would provide an innocent explanation for the presence of stolen items on his property. Vestre had learned about Phelps from conversations with "people on the outside." Report of Proceedings (RP) (June 7, 2016; July 29, 2016) at 8. Defense counsel told the trial court that he did not know where Phelps was nor what she would testify to.

---

[1] Because Crista and Sarah Arends share the same last name, we use their first names for clarity.

Vestre ultimately stated that he was willing to sign a speedy trial waiver. The State admitted that it would not be prejudiced by a continuance. The trial court denied the continuance motion because a jury venire was ready, and the limited information about Vestre's potential witness did not warrant a delay. The trial court emphasized that Vestre did not know Phelps's whereabouts or contact information and did not know what testimony she could provide.

### III. STATE'S WITNESSES

The case proceeded to a jury trial. The State called Crista, Chief Eastham, Grays Harbor County Sheriff's Deputy Keith Peterson, Seaport Building facility manager Shawn Cross, former Grays Harbor Historical Seaport Authority Executive Director Leslie Bolton, Grays Harbor Historical Seaport Authority Executive Director Brandi Bednarik, and electrician estimator James Lawrence.[2]

### A. CRISTA ARENDS

When the State asked if Crista knew "the defendant," she said, "Yes, sir," and stated that his name was Robert Vestre. 2 RP at 169. They had known each other since high school. Crista had been looking for an abandoned building to burglarize and identified the Seaport Building as a target. Crista returned to the building with her daughter, Sarah, and they began stripping wire from the building. Crista called Vestre and Ortiz to come to the building and help. While they were stripping out the wire, Vestre used a forklift to rip the electrical conduits directly from the walls. There was an antique safe located inside the Seaport Building with hand-painted interior doors. Vestre removed the interior doors from the safe and took them from the building.

---

[2] Sarah did not testify. There was a warrant for her arrest at the time of Vestre's trial.

After Crista, Sarah, Vestre, and Ortiz loaded the stolen items into their vehicles, they all returned to Maple Valley and unloaded the truck at Crista's house. Vestre took some items to his home. They agreed to return to the Seaport Building the next day. The next morning, Crista, Vestre, and Ortiz returned to the Seaport Building and "did the same work." 2 RP at 201. They took another truckload of materials. The three of them were arrested a short time later at another industrial building in South Bend.

Crista pleaded guilty to one count of second degree burglary for the Seaport Building burglary and was in prison at the time of Vestre's trial. Crista also acknowledged prior convictions for third degree theft in 2015 and second degree burglary in 2013.

## B. LAW ENFORCEMENT TESTIMONY

Chief Eastham testified that he arrested Vestre on the morning of June 15 in South Bend. Vestre, Ortiz, and Crista had a black pickup truck filled with assorted metal materials, a roll of lead, electrical conduit boxes, sailing equipment, and parts of a heat pump system.

Deputy Peterson investigated the Seaport Building break-in. Peterson obtained a warrant to search property in Maple Valley for items that were missing from the Seaport Building. In a trailer on the property, identified as Vestre's, Peterson found documents with Vestre's and Ortiz's names on them, a photograph of Vestre, and a pawn ticket with Vestre's name on it. Peterson found two door panels from the Seaport Building safe inside Vestre's trailer. Some of the art missing from the Seaport Building was in a car next to the trailer.

Peterson also had a warrant to search Crista's residence. He found paintings and 400 pounds of wire in a shed behind the house connected with the Seaport Building burglary.

C. OTHER TESTIMONY

Cross was the facilities manager for the Seaport Building at the time of the burglary. Cross testified that when he arrived at the Seaport Building on June 15, 2015, the day of Vestre's second unlawful entry into the building, it was severely damaged. The wiring and panels had been ripped out of the walls, a door was ripped off the hinges, and all the metal components had been stripped out of the heat pump.

In June 2015, Bolton was the executive director of the Grays Harbor Historical Seaport Authority. Bolton testified that the doors of an old safe and some pieces of artwork were taken from the Seaport Building. Pipes were broken on the second floor, which caused flooding in the building. A roll of lead sheeting was missing, and some sailing equipment had been taken. Bolton identified panels from the safe found inside Vestre's trailer. He also identified the Seaport Building's stolen art work in photos of items in the car on Vestre's property.

Bednarik, the executive director of the Grays Harbor Historical Seaport Authority, testified about the damage to the property caused by the burglary. She worked with the insurance company to solicit bids to fix the property damage to the electrical system, heat pump, and plumbing.

Lawrence, an electrician estimator who examined the Seaport Building's damage to provide a repair bid, also testified. He provided a $22,500 bid for the electrical repairs. He also observed other structural and water damage to nonelectrical systems, which he did not include in his bid.

IV. MOTION TO DISMISS, CLOSING ARGUMENTS, AND JURY INSTRUCTIONS

After the State rested, Vestre moved to dismiss because Crista did not specifically identify him during her testimony. The State argued that Crista did identify Vestre when she said she knew

5

the defendant and stated his name. Vestre failed to provide authority that Crista's identification was insufficient. The trial court denied Vestre's motion, saying, "It was clear to me through her saying that she knew the defendant and she stated his name. . . . But I don't know of any case that says the only way you can identify a person is by pointing to him in court." 2 RP at 214-15. Vestre rested his case without presenting any witnesses.

In the State's closing, the prosecutor explained the timeline of events by which Vestre broke into the Seaport Building on two successive days. The State pointed out that, in addition to Crista's testimony detailing Vestre's participation, law enforcement testified to finding stolen property from the Seaport Building at Vestre's residence.

In closing, defense counsel argued that Sarah could have moved some of the stolen property from her home to Vestre's trailer, so the presence of stolen property in the trailer did not establish that Vestre actually stole it.

The parties and the trial court did not propose, discuss, or give a unanimity instruction as to which act the State relied upon to support the burglary conviction.

## V. VERDICT AND SENTENCING

The jury found Vestre guilty of second degree burglary, first degree theft, and first degree malicious mischief.

At sentencing, the State provided Vestre with copies of the certified judgment and sentence to support his criminal history. Vestre and his attorney agreed to Vestre's criminal history and the calculation of his offender score of 10 for the burglary conviction. His offender score for the burglary offense included the current theft and malicious mischief offenses as separate criminal

conduct, each providing one additional point. Defense counsel did not argue that any of Vestre's offenses constituted the same criminal conduct.

Vestre requested that the trial court impose a prison-based drug offender sentencing alternative (DOSA), RCW 9.94A.660. The State objected to the DOSA. The State sought an exceptional sentence above the standard range on the grounds that one of Vestre's offenses was going unpunished due to his high offender score. The trial court denied the defense request for the DOSA and the State's request for an upward exceptional sentence and instead imposed a standard range sentence at the high end of the range, 68 months, and ordered Vestre to serve concurrent sentences of 43 months for the theft and malicious mischief. Vestre appeals.

## ANALYSIS

### I. CONTINUANCE MOTION

Vestre argues that the trial court abused its discretion when it denied his continuance motion. He argues that the factors supporting his continuance, including his due process rights, outweighed any interest the trial court had in proceeding with the scheduled trial. We disagree.

### A. PRINCIPLES OF LAW

We review the trial court's decision to deny a continuance for abuse of discretion. *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004). A trial court abuses its discretion when its decision is manifestly unreasonable, or based on untenable grounds or for untenable reasons. *Downing*, 151 Wn.2d at 272. In exercising discretion to deny a continuance, trial courts may consider many factors, including surprise, diligence, redundancy, due process, materiality, and maintenance of orderly procedure. *Downing*, 151 Wn.2d at 273.

## B. NO ERROR

### 1. SURPRISE

Vestre is correct that the element of surprise weighs in favor of the continuance given that he allegedly learned the morning of trial that Phelps was a potential witness. *See Downing*, 151 Wn.2d at 273.

### 2. DILIGENCE

Vestre argues that he was diligent because he investigated all other potential witnesses known up to the morning of trial. But diligence does not weigh in favor of granting the continuance because Vestre was not diligent with respect to *the witness at issue*. He acknowledged that he had not had an opportunity to investigate the witness and did not know her whereabouts or what she would testify to. Vestre did not provide any reason this witness was not identified earlier. Thus, diligence does not weigh in favor of granting his continuance. *See Downing*, 151 Wn.2d at 273.

### 3. MATERIALITY

Here, Vestre asserts that Phelps's testimony was material because her potential testimony, based on third-party reports, may have supported that Sarah planted stolen items on Vestre's property to frame him. However, this claim fails because Vestre's offer of proof was insufficient to establish the materiality of Phelps's potential testimony.

An offer of proof should inform the trial court of the legal theory under which the offered evidence is admissible, inform the trial judge of the specific nature of the offered evidence so the trial court can judge its admissibility, and create a record adequate for appellate review. *State v. Ray*, 116 Wn.2d 531, 538, 806 P.2d 1220 (1991). Here, Vestre's offer of proof was insufficient to inform the judge of the specific nature of the evidence to establish its materiality.

Vestre's offer of proof did not specify what Phelps's testimony would be or give information about her reliability or credibility. In fact, Vestre's counsel admitted he did not know where the potential witness was or what she would testify to. He did not express that the witness would be qualified to testify by having personal knowledge of events material to Vestre's case. Such lack of substance does not inform the trial judge of the specific nature of the offered evidence, and it fails to establish the materiality of the evidence. *See Ray*, 116 Wn.2d at 538.

Vestre relies on *In re Detention of McGary*, 175 Wn. App. 328, 306 P.3d 1005 (2013). *McGary* is clearly distinguishable from the facts here because, unlike the defendant in *McGary*, Vestre failed to produce the witness or provide substantive information regarding the basis of her testimony or the substance of the potential testimony. Contrary to Vestre's assertions, his offer of proof was inadequate to establish the materiality of Phelps's purported testimony because the offer of proof did not specify what Phelps's testimony would be or give information about her reliability or credibility. *State v. Negrin*, 37 Wn. App. 516, 526, 681 P.2d 1287 (1984).

Vestre failed to establish that Phelps's potential testimony would have been material, so materiality did not weigh in favor of his continuance motion. *See Downing*, 151 Wn.2d at 273.

4.    MAINTENANCE OF ORDERLY PROCEDURE

The parties agree that maintenance of orderly procedure weighed against granting Vestre's continuance motion, but Vestre argues that his right to present a witness material to his defense outweighed maintenance of orderly procedure.

As discussed above, Vestre failed to establish that Phelps's testimony was material to his defense. After considering Vestre's arguments regarding the testimony, the trial court denied the continuance motion and emphasized that the venire was assembled and ready to go and there were

"40 to 50 jurors over there waiting." RP (June 7, 2016; July 29, 2016) at 7. When weighed against the proposed testimony of a nonmaterial witness, the trial court did not err when it concluded that the balance weighed in favor of maintaining orderly procedure and proceeding with trial as planned.

5. DUE PROCESS

Vestre argues that due process weighed in favor of granting the continuance. To support this argument, he asserts that his due process rights were violated because he was denied the ability to delay trial to investigate a potential material witness. The State argues in part that because the proposed testimony was not material, Vestre's due process rights were not violated. We agree with the State.

A trial court's denial of a continuance motion may infringe on a defendant's federal Sixth Amendment right to compulsory process and right to present a defense "if the denial prevents the defendant from presenting a witness *material* to his defense." *Downing*, 151 Wn.2d at 275 (emphasis added).

As discussed above, Vestre failed to establish that Phelps's testimony was material to his defense. Because he has failed to show that he was prevented from presenting a material witness, the trial court's continuance denial did not infringe on his due process rights, and due process did not weigh in favor of granting the continuance. *See Downing*, 151 Wn.2d at 273.

C. CONCLUSION

Vestre did not diligently investigate the potential witness, he failed to establish the materiality of his potential witness's testimony, and he failed to show that his continuance motion denial violated due process. In addition, the venire was assembled and ready. Based on these

considerations, the trial court's reasoning rests on factors that trial courts are explicitly allowed to consider when denying a continuance. *Downing*, 151 Wn.2d at 273. As such, the trial court based its denial of the continuance motion on tenable grounds and reasons and did not abuse its discretion. *Downing*, 151 Wn.2d at 272.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

The parties dispute whether Vestre's counsel provided ineffective assistance at sentencing when he failed to argue that the trial court should disregard the burglary anti-merger statute and instead consider Vestre's theft and malicious mischief offenses to be the same criminal conduct as his burglary offense. We agree with the State that counsel was not deficient.

## A. PRINCIPLES OF LAW

Ineffective assistance of counsel is a mixed question of law and fact that we review de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To establish a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *State v. Grier*, 171 Wn.2d 17, 33-34, 246 P.3d 1260 (2011). A failure to satisfy either prong is fatal to an ineffective assistance of counsel claim. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

When some or all of an offender's current offenses encompass the same criminal conduct, those offenses are counted as one crime in the offender score. RCW 9.94A.589(l)(a). Generally, offenses constitute the same criminal conduct if they are (1) committed with the same intent, (2) committed at the same time and place, and (3) involve the same victim. RCW 9.94A.589(1)(a). However, under RCW 9A.52.050, the anti-merger statute, a trial court may consider crimes

committed in the commission of a burglary to be *separate* criminal conduct from the burglary when calculating the burglary offender score, even if the crimes would otherwise be considered the same criminal conduct. *State v. Lessley*, 118 Wn.2d 773, 781, 827 P.2d 996 (1992).

## B. NO DEFICIENCY

Vestre asserts that his counsel deficiently failed to argue that the trial court could disregard the burglary anti-merger statute and failed to argue that theft and malicious mischief should be considered the same criminal conduct as the burglary. We disagree.

The defendant bears the burden of establishing deficient performance, and we presume that counsel's performance was reasonable. *Grier*, 171 Wn.2d at 33. Performance is deficient if it falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33. Counsel's conduct is not deficient when it can be characterized as legitimate trial strategy or tactics. *Grier*, 171 Wn.2d at 33.

Defense counsel acted *tactically* when he focused on obtaining a DOSA rather than challenging the offender score. Defense counsel requested a DOSA in his sentencing materials and in oral argument at sentencing. In this case, Vestre caused tens of thousands of dollars of damage to the electrical system alone and had an extensive record of property crimes. Given these circumstances, it was reasonable for defense counsel to argue for the DOSA rather than arguing for a more lenient offender score calculation, which may have been unlikely and undermined the defense's persuasiveness. And although Vestre's counsel could have made both arguments, Vestre provides no authority that counsel is required to make *all* possible arguments for the representation to be considered reasonable.

Because counsel's conduct can be characterized as legitimate trial strategy or tactics, his performance is not deficient. *Grier*, 171 Wn.2d at 33. We therefore need not reach the prejudice prong. *Strickland*, 466 U.S. at 687. We hold that Vestre's counsel was not ineffective.

### III. UNANIMITY INSTRUCTION

Vestre argues that he was denied his right to a unanimous jury verdict because the State presented evidence regarding two acts that could have supported his burglary charge, and the trial court failed to provide a unanimity instruction. The State argues that because Vestre's two unlawful entries into the Seaport Building on successive days were a continuing course of conduct, no unanimity instruction was required. We agree with the State.

### A. PRINCIPLES OF LAW

Criminal defendants have the constitutional right to a unanimous jury verdict. *Richardson v. United States*, 526 U.S. 813, 817, 119 S. Ct. 1707, 143 L. Ed. 2d 985 (1999); *State v. Petrich*, 101 Wn.2d 566, 569, 683 P.2d 173 (1984). When evidence of multiple acts is presented, any one of which could constitute the charged crime, the trial court must ensure the jury is unanimous as to which of the acts supports the conviction. *Petrich*, 101 Wn.2d at 572.

However, a unanimity instruction is not required where the State presents evidence of multiple acts that constitute a "continuing course of conduct." *State v. Handran*, 113 Wn.2d 11, 17, 775 P.2d 453 (1989). To determine whether several criminal acts constitute a continuing course of conduct, the trial court reviews facts in a "commonsense manner," considering (1) the time separating the criminal acts and (2) whether the acts involved the same parties, location, and ultimate purpose. *State v. Brown*, 159 Wn. App. 1, 14, 248 P.3d 518 (2010). When several criminal acts occur over the course of two days and involve the same parties, location, and ultimate

13

purpose, the acts may be considered the same criminal conduct. *Brown*, 159 Wn. App. at 7, 13-15.

B. CONTINUING COURSE OF CONDUCT

Here, Crista's testimony established that Vestre unlawfully entered the Seaport Building on June 14 and the morning of June 15 before his arrest. But as the State asserts, Vestre's actions involved a continuing course of conduct.

Vestre's acts involved the same parties—he committed the crimes with the same individuals, and the victim was the Grays Harbor Historical Seaport Authority. The crimes happened at the same location, the Seaport Building in Junction City. And the burglaries on both days had the same purpose, which was to steal metal and other items from the building. The only difference is that the two incidents were separated by less than a day during which Vestre and his accomplices took the stolen items to Maple Valley before returning to steal more metal and other objects. These facts establish that Vestre was engaged in a continuing course of conduct when he committed each burglary at the Seaport Building. *Brown*, 159 Wn. App. at 14.

Vestre discusses *State v. McGill*, noted at 198 Wn. App. 1040, *review denied*, 189 Wn.2d 1012 (2017), to support his argument that his acts were not a continuing course of conduct. But *McGill* involves a situation where there was a continuing course of conduct where the acts where separated by mere minutes. Vestre argues that his acts were separated by hours, not minutes, and therefore his acts were not a continuing course of conduct. But Vestre's authority does not support his argument that he was not engaged in a continuing course of conduct because acts separated by

a day can constitute the same criminal conduct where, as here, they involve the same parties, location, and ultimate purpose. *Brown*, 159 Wn. App. at 7, 13-15.[3]

Because Vestre's actions constitute a continuing course of conduct, a unanimity instruction was not required. *Handran*, 113 Wn.2d at 17.

## IV.  STATEMENT OF ADDITIONAL GROUNDS

### A.  INEFFECTIVE ASSISTANCE OF COUNSEL

Vestre claims that his counsel was deficient for failing to argue that the prosecutor was vindictive for stacking charges against him and for failing to call a crime lab technician as a witness.  These claims fail.

To establish a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Grier*, 171 Wn.2d at 33-34.  The defendant bears the burden of establishing deficient performance, and we presume that counsel's performance was reasonable. *Grier*, 171 Wn.2d at 33.  Performance is deficient if it falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33.  A failure to satisfy either prong is fatal to an ineffective assistance of counsel claim. *Strickland,* 466 U.S. at 687.

Prosecutorial vindictiveness violates due process and occurs when the government retaliates against a defendant in response to the defendant's prior exercise of constitutional or statutory rights. *State v. Korum*, 157 Wn.2d 614, 627, 141 P.3d 13 (2006).  To be vindictive, a prosecutor's action must be "'*designed* to penalize a defendant for invoking legally protected

---

[3] Because a unanimity instruction was not required, we do not reach whether any error was manifest.

15

rights.'" *Korum*, 157 Wn.2d at 627 (quoting *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987)).

Here, Vestre does not argue, nor is there any support in the record for concluding, that the prosecutor's charging decision was related to Vestre's exercise of his legally protected rights. Because, based on this record, there are no grounds for asserting that the prosecutor's charges were vindictive, Vestre's counsel was not deficient for failing to make this argument. *See Grier*, 171 Wn.2d at 33.

Vestre also claims counsel was deficient for failing to call a crime lab technician as a witness. Vestre asserts that the lab technician could testify "about the finger prints that come up not mine." SAG at 3. Decisions to call a witness are generally a matter of legitimate trial tactics and will not support a claim of ineffective assistance of counsel. *State v. Byrd*, 30 Wn. App. 794, 799, 638 P.2d 601 (1981). Because Vestre has not shown that failure to call the lab technician was not a reasonable trial tactic, this claim fails.

Because, on this record, Vestre has failed to show his counsel was deficient, his ineffective assistance claim fails. *Grier*, 171 Wn.2d at 33-34.

## B. PROSECUTORIAL MISCONDUCT

Vestre claims that the prosecutor committed misconduct during closing argument by saying that if Vestre was guilty of one crime, he was guilty of all the charged crimes. Vestre also appears to argue that the prosecutor acted improperly by opposing the DOSA and obtaining a high-end standard range sentence.

To prevail on a claim of prosecutorial misconduct, Vestre must show that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012).

Contrary to Vestre's assertion, the prosecutor did not argue that if Vestre was guilty of one crime, he was guilty of all of them. Rather, the prosecutor argued that the evidence supported finding Vestre guilty of all three crimes. And the prosecutor did nothing improper when he opposed the DOSA and sought a high-end sentence. Because the prosecutor did nothing improper, Vestre's claims fail.

## C. SUFFICIENCY OF THE EVIDENCE

Vestre challenges Crista's credibility and claims that because Crista is not credible, sufficient evidence does not support the jury's verdicts. Specifically, Vestre argues that Crista's testimony that she called Vestre could have been corroborated with cell phone records but was not. And he argues that there was insufficient evidence because Crista had a motive to lie and her testimony violated his Sixth Amendment rights.

Credibility determinations are for the trier of fact and will not be reviewed on appeal. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Vestre's "sufficiency of the evidence" claims are really challenges to Crista's credibility, and credibility determinations are left to the jury and not reviewable. *Camarillo*, 115 Wn.2d at 71. Furthermore, Vestre fails to explain how Crista's alleged credibility issues violated his Sixth Amendment rights. As such, his arguments based on challenges to Crista's testimony fail.

### D. MOTION TO DISMISS

Vestre argues that his motion to dismiss was improperly denied because Crista never properly identified him by pointing to him.

We review a trial court's decision on a motion to dismiss for an abuse of discretion. *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993). A trial court abuses its discretion when its decision is manifestly unreasonable, when it exercises its discretion on untenable grounds, or when it makes its decision for untenable reasons. *Blackwell*, 120 Wn.2d at 830.

Here, when asked if she knew "the defendant," Crista said, "Yes, sir," and stated that the defendant's name was Robert Vestre. 2 RP at 169. The trial court concluded that this identification was sufficient. Vestre has failed to establish that Crista's identification of Vestre was insufficient. We hold that the trial court did not abuse its discretion.

### E. ISSUES RELYING ON MATTERS OUTSIDE THE RECORD

Vestre asserts several issues that rest on matters outside the record. Vestre argues that he was improperly denied access to recorded phone calls between Crista and Sarah; that the prosecutor put Vestre's life in "grave danger" (SAG at 8) by stating in the presence of other inmates that Vestre had offered to cooperate with police on various matters; that the prosecutor and Deputy Peterson improperly tainted or influenced the jury because Vestre saw juror 37 give them "looks and smiles" (SAG at 6); and that the search warrant was improper because he did not own the house or car that were searched.

No. 49259-8-II

We do not consider matters outside the record on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995). Because it appears that Vestre's SAG claims 4, 7b, 9, 11, and 12 rest on matters outside the record, we do not consider these arguments further.[4]

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

BJORGEN, C.J.

SUTTON, J.

_____

[4] Because we already addressed above whether the trial court erred by denying Vestre's continuance motion, we don't address his SAG claims 1 and 7a.